[No. 52571–4.   En Banc.   November 6, 1986.]

WARREN G. GUNTHEROTH, ET AL, *Appellants*, v. KEITH A. RODAWAY, ET AL, *Respondents*.

*MacDonald, Hoague & Bayless,* by *Kenneth A. MacDonald,* for appellants.

*Williams, Kastner & Gibbs,* by *Douglas A. Hofmann,* for respondents.

DURHAM, J.—Warren Guntheroth, M.D., brought this defamation action against Keith Rodaway, M.D. The trial court granted Rodaway's motion for summary judgment of dismissal. We affirm.

Rodaway is a pediatrician in private practice. He is also on the staff of Children's Orthopedic Hospital (COH) and is a clinical associate professor at the University of Washington Medical School. Guntheroth is a professor of pediatrics and head of the division of pediatric cardiology at the University of Washington Medical School who practices medicine at University Hospital.

During the time period relevant to this case, COH and the Department of Pediatrics at University Hospital operated under an affiliation agreement. Sometime in the mid–1970's, the circumstances of this affiliation changed. Until this time, COH and University Hospital had each operated general inpatient services in pediatrics. The change involved closing the inpatient pediatric service at University Hospital, except for neonatal intensive care units. Inpatient pediatric services were placed in COH and the University faculty cared for patients there.

Guntheroth was opposed to the closure of the inpatient service at University Hospital and the placement of the service at COH. He expressed this opposition in a number of written statements, including a December 1976 letter to the Board of Trustees of COH, with copies to the University of Washington Board of Regents. He also wrote an editorial in the American Heart Journal criticizing the general concept of segregating pediatric hospitals from the mainstream of medical practice. Sometime in 1979, Guntheroth withdrew from the staff at COH, ceasing to see patients there. Guntheroth's name was not on lists of COH medical staff for July 1, 1979 to June 30, 1981.

This action involves a letter dated August 11, 1980, which Rodaway wrote to the Credentials Committee of COH among others. The letter related to a meeting between Guntheroth and one of Rodaway's patients, Elaine Engebo. Born in 1960, Elaine had been a patient of Dr.

Rodaway since 1966. In 1976, she began to experience blackouts, weakness, lethargy and falls resulting from blackouts. Rodaway referred her to COH for a cardiac consultation by the chief pediatric cardiologist. For the next 2 years, she was treated intermittently by that cardiologist and his associate. At some point, Elaine was monitored on equipment which showed that her heart rate had dropped to 20 beats per minute.

At the beginning of July 1979, an emergency room physician in Federal Way diagnosed Elaine as having sick sinus syndrome. Later that month, a pacemaker was implanted in Elaine by a cardiovascular surgeon at COH. After the pacemaker was implanted, Elaine had slight dizzy episodes. However, her physical condition generally improved.

On October 1, 1979, Elaine went to University Hospital for additional consultation with Dr. Kawabori, a pediatric cardiologist who practiced there and at COH. She was unable to find Kawabori and hospital personnel sent her to an examining room. An intern came in and discussed with Elaine the history of her heart problems and her negative feelings toward doctors. She was upset and angry over being there and having to answer questions. After 20 to 30 minutes, the intern left. He returned a few minutes later with Dr. Guntheroth. Kawabori had previously told Guntheroth that he might be late for the appointment and had given him documents and notes about Elaine. This was the first time Elaine had seen Guntheroth.

According to Elaine's testimony, the meeting with Guntheroth included the following events. Elaine told him she had slight lightheadedness, but nothing compared to what it had been. She and Guntheroth then discussed the pacemaker. Elaine testified:

> I was led to believe that I shouldn't have had it. . . . He said that having had put that in is actually lessening my muscle. It was making it weaker. It was actually doing more damage than it was doing good and I should have it removed.

Elaine's deposition also contains the following testimony:

Q: Did Doctor Guntheroth say anything about the wisdom utilized by the doctors who had recommended the pacemaker and put it in you?

A: I don't think that he actually mentioned any names other than Children's and that obviously it wasn't a good decision since he thought it shouldn't be there.

Q: Did he say specifically that the other doctors at Children's had not made a good decision in terms of your pacemaker?

A: I can't say that he directed it toward any doctors but that it was just a mistake so that I should be putting the blame on somebody since he knew that it was done at Children's.

Q: So you inferred that he was referring to the doctors?

A: Yes.

Elaine testified that after the meeting, "I was very upset with all doctors in general. I didn't know who to believe." She went home and told her mother what had happened at the meeting and her reaction to it. According to Mrs. Engebo, Elaine was crying, very angry and upset. During her deposition, Elaine was asked if the incident with Guntheroth was part of the reason she later went to a psychiatrist. She responded that was "half" of the reason.

On the same day of his meeting with Elaine, Guntheroth wrote Rodaway a letter about the meeting describing his findings. During his deposition, Guntheroth testified that at the meeting with Elaine, he never indicated to her that the pacemaker was doing more harm than good or was damaging her heart muscle. He further testified that although they discussed if the pacemaker should be removed or replaced once it stopped functioning, he did not state directly that she did not need the pacemaker and that it should be removed.

Sometime after October 1, 1979, Mrs. Engebo went alone to see Rodaway. She told Rodaway about the meeting between Elaine and Guntheroth and wanted an explanation for it because Elaine was still upset.

On November 26, 1979, Rodaway wrote Guntheroth a letter essentially telling him that he was upset to have heard from Elaine's family that Guntheroth had told her

the pacemaker was needless and had suggested it was damaging Elaine's heart. Rodaway also suggested Guntheroth had brought Elaine into a conflict among doctors. Subsequently, at an appointment with Elaine for another purpose, Rodaway showed her this letter, told her what Mrs. Engebo had told him about Elaine's meeting with Guntheroth on October 1, and asked her what had happened during that meeting. They discussed the incident. According to Elaine, Rodaway told her he was upset with the situation and that it was a "big political struggle between the cardiologists of the Seattle area and that was the reason why I shouldn't have been pulled into it."

On December 18, 1979, Guntheroth wrote to Rodaway in response to Rodaway's November 26 letter. He described his version of the meeting with Elaine on October 1. He denied that he had criticized the judgment of the physicians who recommended and implanted the pacemaker, and that his behavior was linked to the political situation at COH. He stated that he had attempted to explain to Elaine why her therapy had not worked, despite reasonable expectations, but that he had tried to avoid any criticism of her prior medical care. At some point after Rodaway received this letter, he showed it to Elaine.

On August 11, 1980, Rodaway wrote the letter that is the subject of this action. See appendix. It was addressed to the Credentials Committee of COH. Copies were sent to Rodaway's attorney and to several University officials.

Guntheroth brought this action against Rodaway claiming he was defamed in the August 11, 1980 letter. Rodaway moved for summary judgment of dismissal, and Guntheroth moved to strike portions of Rodaway's affidavit. The trial court granted Rodaway's motion and dismissed the action. It found that the August 11, 1980 letter

was qualifiedly privileged and no showing has been made that the publisher knew the facts therein to be false or acted in reckless disregard of the truth. Moreover, plaintiffs under the facts of this case should be considered to

be a public official and a public figure for purposes of this defamation action.

Guntheroth's motion to strike was also denied. Guntheroth appealed to the Court of Appeals, which transferred the case to this court pursuant to RAP 4.3.

■ A plaintiff in a defamation case must establish four elements to recover: (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages. *Bender v. Seattle,* 99 Wn.2d 582, 599, 664 P.2d 492 (1983); *Mark v. Seattle Times,* 96 Wn.2d 473, 486, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982). In order to establish a prima facie case for purposes of resisting Rodaway's motion for summary judgment, Guntheroth must provide facts from which a jury could find that each element of defamation exists. *See Mark,* at 486; *Dunlap v. Wayne,* 105 Wn.2d 529, 542, 716 P.2d 842 (1986). If, however, there is no genuine issue as to any material fact, considering the evidence and all reasonable inferences therefrom in the light most favorable to Guntheroth, summary judgment is proper. *Dunlap,* at 535; CR 56(c).

The parties raise questions concerning the evidentiary standard of proof Guntheroth must meet in order to show that there is a genuine issue of material fact. We are aware of the discussions in prior cases of the applicable standard of proof where a plaintiff in a defamation action seeks to overcome a defendant's motion for summary judgment. In *Anderson v. Liberty Lobby, Inc.,* __ U.S. __, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986), a recent libel action involving a public figure, the United States Supreme Court held that in ruling on a defense motion for summary judgment, the trial court must be guided by the clear and convincing evidence standard that would apply in proving actual malice to the jury.[1] The Court reasoned that the inquiry involved in a

[1]In *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80, 285-86, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964), the Court held that a plaintiff in a libel action who is a public official must show with "convincing clarity" that the

ruling on a motion for summary judgment necessarily implicates the evidentiary standard of proof that would apply at a trial on the merits. *Anderson*, 106 S. Ct. at 2512. *Cf. Chase v. Daily Record, Inc.*, 83 Wn.2d 37, 43, 515 P.2d 154 (1973) (plaintiff in a defamation action who is a public official must establish a prima facie case with convincing clarity to withstand defendant's motion for summary judgment); *Mark v. Seattle Times, supra* at 486-87 (plaintiff in a defamation action who is a private individual must establish a prima facie case with convincing clarity to resist a motion for summary judgment); *Dunlap v. Wayne, supra* at 535 (convincing clarity standard of *Mark* should not be imposed in an action against a nonmedia defendant for a statement about private affairs).

In the present case, however, regardless of whether the clear and convincing evidence standard or a preponderance of the evidence standard applies, Guntheroth has failed to establish a prima facie case of defamation. Specifically, he has not presented any evidence which would raise a genuine issue of material fact under either standard of proof as to the element of fault.

The parties raise a number of issues concerning fault. First, Guntheroth contends he was neither a public official nor a public figure. The plaintiff's status is relevant to the degree of fault necessary to establish a prima facie case of defamation. A plaintiff who is a public official or a public figure must prove that the defendant acted with actual malice, *i.e.*, with knowledge that the statement was false or with reckless disregard as to if it was false. On the other hand, when the plaintiff is a private individual, a negligence standard of fault applies. *Bender v. Seattle, supra* at 599.

Guntheroth also argues that the letter is not subject to any qualified privilege, while Rodaway contends that certain qualified privileges do apply, and that there is no

---

defendant acted with actual malice. This requirement was later extended to libel actions where the plaintiff is a public figure. *Curtis Pub'g Co. v. Butts*, 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967).

showing that Rodaway abused such privileges. Fault is the relevant consideration in determining if the defendant abused a qualified privilege.[2]

■ We find it unnecessary to engage in a detailed analysis of these questions because even under the lowest possible degree of fault, the negligence standard, Guntheroth has failed to present a genuine issue of material fact about any fault on the part of Rodaway. In order to create a genuine issue of material fact as to negligence, Guntheroth would have had to provide specific facts from which a jury could find Rodaway acted without reasonable care in publishing the August 1980 letter.

We are unable to find such facts in the record. The evidence shows that Rodaway investigated what occurred at the meeting between Guntheroth and Elaine after he first learned of the incident from Mrs. Engebo. Rodaway asked Elaine herself what had happened and recounted to her Mrs. Engebo's description of the incident. There is no evidence that Elaine suggested to Rodaway that Mrs. Engebo's version of what occurred during the meeting was incorrect. Rodaway also showed Elaine the November letter he had written to Guntheroth describing what Mrs. Engebo had told him, and Guntheroth's December reply denying the assertions in that letter. There is no evidence that Elaine reacted to either letter in a way that should have caused Rodaway to doubt the truth of the statements he eventually placed in the August 1980 letter.[3] The evidence

---

[2]We note an apparent incongruity in our prior cases regarding the degree of fault which is necessary to prove abuse of a qualified privilege. *Compare Lillig v. Becton–Dickinson,* 105 Wn.2d 653, 658, 717 P.2d 1371 (1986) *with Dunlap v. Wayne,* 105 Wn.2d 529, 542, 716 P.2d 842 (1986). Henceforth, this court will follow the rule indicated in the Restatement (Second) of Torts § 600, at 288 (1977). Thus, proof of knowledge or reckless disregard as to the falsity of a statement is required to establish abuse of a qualified privilege. *Lillig v. Becton–Dickinson, supra; Bender v. Seattle,* 99 Wn.2d 582, 601–02, 664 P.2d 492 (1983).

[3]Rodaway's receipt of Guntheroth's December 1979 letter denying Elaine's version of what occurred in October does not establish that Rodaway acted unreasonably in publishing the August 1980 letter. The mere fact that the plaintiff told the defendant that certain statements were untrue does not mean that

as a whole shows that Rodaway had a reasonable basis for believing in the truth of the statements in the letter. Guntheroth has not provided facts indicating that Rodaway acted without reasonable care in publishing it. We conclude, therefore, that Guntheroth has not presented enough evidence to raise a genuine issue of material fact as to fault, under either the convincing clarity standard or the preponderance of the evidence standard. This amounts to a failure to establish a prima facie case of defamation, since fault is a necessary element of a defamation action.

Finally, Guntheroth contends the trial court should have stricken part of Rodaway's affidavit. In the portion in question, Rodaway makes a number of assertions that he is "aware" of or "familiar with" certain aspects of the conflict over the relationship between COH and University Hospital. Guntheroth contends that awareness and familiarity are not "personal knowledge", and therefore, such statements should have been stricken pursuant to CR 56(e).

CR 56(e) provides, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rodaway's affidavit does not contain facts showing that the alleged awareness and familiarity were based on personal knowledge. Therefore, the portion of the affidavit in question does not satisfy the requirements of CR 56(e).

However, this part of the affidavit is not critical to the

---

the defendant knew they were false or acted negligently in proceeding to publish them. *See Sewell v. Brookbank,* 119 Ariz. 422, 426, 581 P.2d 267 (Ct. App. 1978). *Chase v. Daily Record, Inc.,* 83 Wn.2d 37, 44, 515 P.2d 154 (1973) is misleading in implying that the plaintiff's denial of a statement necessarily establishes that the defendant knew it was false. The totality of the defendant's knowledge before publication must be considered in deciding if he was at fault in publishing the statement. In the present case, Rodaway's letter was based on information he had *received from two sources,* Elaine and Mrs. Engebo. Furthermore, he showed Guntheroth's denials to Elaine before publishing the letter. Thus, while Rodaway knew that Guntheroth had denied Elaine's version of the meeting, he also had reason to believe that her version was true.

determination of the issues in this case. Other evidence providing similar information about Guntheroth's involvement in the dispute over the relationship between COH and University Hospital was presented, including Guntheroth's letters to various parties discussing aspects of the affiliation. Therefore, the elimination of this portion of Rodaway's affidavit does not materially affect the determination of the issues on the motion for summary judgment.

In conclusion, we hold that Guntheroth has not presented facts from which a jury could find Rodaway was at fault in publishing the August 11, 1980 letter. Therefore, Guntheroth has not established a prima facie case of defamation to resist Rodaway's motion for summary judgment. The trial court's judgment is affirmed.

### Appendix

Children's Clinic
Infants, Children and Adolescent Medicine
1814 South 324th Place
Federal Way, WA 98003
838–1901        927–3700

Keith A. Rodaway, M.D.            James E. Rogers, M.D., P.S.
Richard K. Gould, M.D.            Jon R. Almquist, M.D., P.S.
                                 Michael R. Anderson, M.D., P.S.

August 11, 1980
Credentials Committee
Children's Orthopedic Hospital
4800 Sand Point Way N.E.
Seattle, WA. 98105
            Regarding:  Warren G. Guntheroth, M.D.,
                        Professor—Head of the Division
                        of Pediatric Cardiology

Dear Committee persons and related responsible parties:

In November of 1979 I had a patient who had a very unfortunate experience while trying to find Dr. I. Kawabori's clinic at University Hospital. This girl had had a pacemaker implanted because on monitor her heart rate would drop to the twenties and she would feel faint and/or collapse. While searching for Dr. Kawabori she met Dr. Guntheroth, who very explicitly condemned as needless and probably permanently dam-

aging, the pacer she had. He allegedly said some very damning things about the wisdom (or lack of it) of the staff at Children's Orthopedic Hospital in a verbal barrage of thirty to forty five minutes. His conversation engendered such fear in this girl and her mother that particularly the patient (Elaine) has little trust for any physician now, and she has been under psychiatric care since the incident.

This letter was precipitated because just this week *again* she stopped to ask my opinion about the whole situation. She said, "I just can't get what that guy at the University Hospital told me (about the pacemaker damaging and producing progressive weakening of my heart) off my mind. It just plagues me!"

Initially I had planned to write a letter to the Credentials Committee "for their information". However, I felt it was more important to give Dr. Guntheroth the benefit of the direct approach first. I had hoped he would see his mistake of drawing these innocent people into the midst of the medical–political disagreement and would perhaps somehow smooth things over with this family and stop this childish destructive behavior and get on with constructive creative research, teaching, and writing.

I received a brusque letter from Dr. Guntheroth demanding an apology. In the past I have always regarded Dr. Guntheroth as a fine and stimulating teacher. However, his behavior of recent years and particularly the insensitivity to this family's needs and his behavior towards them and me require me as a responsible and concerned physician to report this to you for your consideration.

Sincerely,
(signed) Keith A. Rodaway, M.D.
Keith A. Rodaway, M.D.

KAR/gh
cc: Dwayne Richards, Attorney at Law
    William Gerberding, President, University of Washington
    Robert L. Van Citters, M.D., Dean,
       School of Medicine, University of Washington
    Thomas Grayson, M.D., Vice President,
       Health Sciences, University of Washington
    Beverly Morgan, M.D., Professor—Head,
       Department of Pediatrics, Children's Orthopedic Hospital

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.