[No. 10850-3-III. Division Three. July 30, 1991.]

MARLIN R. MARKS, ET AL, *Respondents,* v. KENNETH J. BENSON, ET AL, *Appellants.*

---

*Robert Doty,* for appellants.

*Michael Platts,* for respondents.

THOMPSON, J. — Kenneth J. Benson and Juli A. Doty (hereafter Benson-Doty) appeal a summary judgment awarding $13,197.76 to Marlin R. Marks and Debra K. Marks. They contend Mr. and Mrs. Marks lacked standing to bring the action because the obligation on which it was based was neither disclosed nor administered in Mr. and Mrs. Markses' Chapter 7 bankruptcy. We agree and reverse.

The facts are somewhat convoluted and need explanation. Mr. and Mrs. Marks owned a service station in

Omak, Washington. They gave Seattle-First National Bank (SeaFirst) a note which was secured by a deed of trust on their home. It is not clear from the record whether the SeaFirst loan proceeds were used to purchase or improve the service station. In any case, on June 1, 1987, Mr. and Mrs. Marks sold their station to Benson-Doty. The parties executed a purchaser's assignment of contract and deed in which Benson-Doty agreed to make the payments on the SeaFirst note.

On December 7, 1988, Mr. and Mrs. Marks filed a Chapter 7 bankruptcy petition. They did not disclose the secured obligation to SeaFirst as a liability, nor did they disclose the assignment or Benson-Doty's duty to make their note payments as an asset. Mr. and Mrs. Marks scheduled their home as an asset, valued it at $30,000, and listed $8,500 payable to Washington Mutual as the only secured debt against it. They claimed the equity in their home exempt. They were granted a discharge on March 24, 1989, and the bankruptcy case was closed May 4, 1989.

Benson-Doty made their December 1988 payment on October 26, 1988. When Mr. and Mrs. Marks filed bankruptcy on December 7, there appears to have been no delinquency or a very minor delinquency on the assignment, but Benson-Doty did default in making payments after December 1988. By letter dated March 27, 1989, 3 days after their bankruptcy discharge, Mr. and Mrs. Markses' attorney advised Benson-Doty they owed $655.58 and demanded immediate payment. In May 1989, Benson-Doty tendered three checks to SeaFirst: one for $18.96 for payment due December 1988, one for $210.04 for the January 1989 payment, and one for $210.04 for the February 1989 payment. The checks were returned with a letter from SeaFirst stating "we are not accepting partial payments on this account. In order to reinstate the loan you will have to receive the Mark's [sic] permission for me to release information to you."

In August 1989, Mr. and Mrs. Marks commenced a lawsuit against Benson-Doty. They alleged that because Benson-Doty did not make payment on the SeaFirst note, the entire balance of the note was due and payable to them. Benson-Doty answered, claiming the note was the property of SeaFirst and any contract rights of Mr. and Mrs. Marks belonged to their bankruptcy trustee.

On October 10, 1989, SeaFirst signed a notice declaring Mr. and Mrs. Marks in default on the note. The notice stated if a cure were not made within 30 days of receipt, a notice of trustee's sale could be recorded and the security sold within 120 days after the sale notice was mailed or served.[1]

On January 9, 1990, Mr. and Mrs. Marks moved for summary judgment against Benson-Doty. In their supporting memorandum, they stated they had contacted their former bankruptcy trustee, who professed no interest in the payments from Benson-Doty. Mr. and Mrs. Marks asserted the trustee would have abandoned the obligation of Benson-Doty if it had been listed on their bankruptcy schedules. An affidavit by the trustee containing averments to this effect was filed.

Apparently, the hearing on Mr. and Mrs. Markses' summary judgment motion was argued January 23, 1990, then continued for additional briefing. On March 6, an order granting summary judgment was entered and on May 4, the order was affirmed. On July 1, the order was revised to reflect what the trial court considered in granting the summary judgment. Benson-Doty appeal.

---

[1]The record does not indicate when the default notice was mailed or received. The notice of trustee's sale is not part of the record either, although Mr. and Mrs. Marks appended a copy to their appellate brief. The notice of trustee's sale is dated November 13, 1989, and sets forth a trustee's sale date of February 16, 1990. Benson-Doty asserted by supplementary brief filed with the trial court on February 29, 1990, that a sale occurred February 16, 1990. There is no indication Mr. and Mrs. Marks disputed this assertion. The trial court was therefore aware of the trustee's sale at the time of the continued summary judgment hearing, but may have been unaware of it at the original hearing.

Benson-Doty first assign error to the trial court's consideration of the bankruptcy trustee's affidavit. They argue the affidavit was based on hearsay and did not comply with either CR 56(e) or ER 702.[2] Mr. and Mrs. Marks contend the trustee expressed his opinion as trustee and the assumed facts he relied on in giving his opinion were accurate. Further, they contend, the affidavit could be viewed as the opinion of an expert witness based on hypothetical facts.

 CR 56(e) requires that affidavits submitted in summary judgment proceedings be made on personal knowledge and set forth such facts as would be admissible in evidence. The affiant must affirmatively show competence to testify to the matters stated. It is not enough that the affiant be "aware of" or be "familiar with" the matter; personal knowledge is required. *Guntheroth v. Rodaway*, 107 Wn.2d 170, 178, 727 P.2d 982 (1986). Unsupported conclusional statements and legal opinions cannot be considered in a summary judgment motion. *Orion Corp. v. State*, 103 Wn.2d 441, 461-62, 693 P.2d 1369 (1985); *Odessa Sch. Dist. 105 v. Insurance Co. of Am.*, 57 Wn. App. 893, 899, 791 P.2d 237 (1990); *Carr v. Deking*, 52 Wn. App. 880, 886, 765 P.2d 40 (1988), *review denied*, 112 Wn.2d 1019 (1989).

The trustee of Mr. and Mrs. Markses' bankruptcy estate averred:

> *My understanding* is that the MARKS had no interest in the receipt of payments from BENSON and DOTY that would be superior to Seattle-First National Bank's. In that case, obviously as Trustee, I would have abandoned the obligation of BENSON and DOTY as it related to the MARKS bankruptcy filing.

(Italics ours.)

The affiant's "understanding" of a fact is similar to his being "aware" of it. It says nothing about personal

---

[2]Benson-Doty also contend the trustee's legal conclusions were incorrect. This contention does not impact the issue of whether the affidavit should have been considered and is addressed in footnote 5.

knowledge and is inadmissible. *Guntheroth*, at 178. Further, the affiant here was expressing his opinion or making a statement as to what he would have done as trustee *if* his understanding were correct.[3] Since the specific facts upon which his understanding was based are not set forth, his conclusional statement is unsupported and should not have been considered. *Carr*, at 886.

The following averment by the trustee is an inadmissible opinion on the law:

> As I had previously stated to MR. DOTY in written correspondence when he inquired about this matter, any property of the debtor's estate reverts to the debtor upon close of the bankruptcy.

Although not determinative to our disposition of this appeal, the trial court erred in considering the trustee's affidavit.

Benson-Doty next assign error to the trial court's determination that Mr. and Mrs. Marks had standing to sue. They argue Mr. and Mrs. Markses' claim accrued prior to their bankruptcy and a discharged debtor lacks standing to pursue an unscheduled claim. They contend *Linklater v. Johnson*, 53 Wn. App. 567, 768 P.2d 1020 (1989) is dispositive.

Mr. and Mrs. Marks respond by alleging that their claim against Benson-Doty arose after their discharge in bankruptcy on February 16, 1990, when SeaFirst foreclosed its deed of trust.

■ ■ *Linklater* held that a party discharged in bankruptcy does not have standing to bring an action for misrepresentation when the right of action accrued prior to the bankruptcy and was neither disclosed nor administered by the bankruptcy trustee. *Linklater*, at 568.

---

[3]While Mr. and Mrs. Marks may not have had an interest in the receipt of payments that would be superior to SeaFirst when the bankruptcy was filed, they asserted a superior interest after SeaFirst's nonjudicial foreclosure. Further, the trustee does not make a statement as to whether Mr. and Mrs. Markses' bankruptcy *estate* had an interest in the assignment superior to SeaFirst. Such fact would be more pertinent on the issue of abandonment than any interest Mr. and Mrs. Marks had as bankruptcy debtors.

The misrepresentation at issue in *Linklater* arose from the debtor's prepetition purchase of a home which was exempted in the bankruptcy proceeding.

The commencement of a bankruptcy case creates an estate which includes all legal or equitable interests of the debtor in property as of the commencement date.[4] 11 U.S.C. § 541(a) (1). The bankruptcy trustee has an obligation to collect and reduce to money the property of the estate. 11 U.S.C. § 704(1). If property is subject to exemption under 11 U.S.C. § 522(b), the debtor must take affirmative steps to remove it from the estate. Unless the bankruptcy court orders otherwise, property of the estate not abandoned under 11 U.S.C. § 554 and not administered in the case remains property of the estate. 11 U.S.C. § 554(d).[5]

As set forth in *Linklater*, at 570:

> [A] discharged debtor lacks legal capacity to subsequently assert title to and pursue an unscheduled claim simply because a trustee, without knowledge of the claim, took no action with respect to it.[6]

In reviewing summary judgment orders, the appellate court will consider only evidence and issues called to the attention of the trial court. RAP 9.12; *Gain v. Carroll Mill Co.*, 114 Wn.2d 254, 261, 787 P.2d 553 (1990). The appellate court places itself in the position of the trial court by considering all evidence and the inferences therefrom most favorably to the nonmoving party and applying the

---

[4]There are limited exceptions set forth in 11 U.S.C. § 541(b), which are irrelevant in this case.

[5]This statement of the law is contrary to the statement contained in the trustee's affidavit that "any property of the debtor's estate reverts to the debtor upon close of the bankruptcy". The trustee's general statement of the law is simply inapplicable under the facts presented here.

[6]*Linklater* does not distinguish between "capacity" to sue and "standing" to sue. We hold the issue presented is best addressed as one involving standing to sue (*i.e.*, no cause of action belonging to the plaintiff has been violated). *See, e.g., Hoskins v. Kirkland*, 7 Wn. App. 957, 961, 503 P.2d 1117 (1972).

standards of CR 56(c); *e.g., Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986).

The trial court had before it the purchaser's assignment of contract and deed and documents from which it could determine when the assignment was executed and when Mr. and Mrs. Marks commenced their bankruptcy case. It may not have had before it the requisite facts from which it could determine when their cause of action against Benson-Doty for breach of the assignment accrued.[7] However, even if a cause of action based on the assignment had not accrued before the bankruptcy petition was filed, the assignment itself was an asset which existed at the commencement of the bankruptcy case. Mr. and Mrs. Markses' contention that they did not disclose this asset because they had no interest in the payments being made by Benson-Doty to SeaFirst is without merit. Their lawsuit against Benson-Doty was based on just such an interest.

Whether the trustee of Mr. and Mrs. Markses' bankruptcy estate would have abandoned the assignment if apprised of all relevant facts is speculative. Whether they could have claimed the proceeds from the assignment exempt, in whole or part, must be determined with reference to their other assets. The holding of *Linklater* rests on sound policy considerations. That is, the federal bankruptcy system is in a superior position to make determinations about the debtor's exemptions and determine when and if an asset, including a right of action, should be abandoned as provided under federal law. Mr. and Mrs. Marks lacked standing to sue on the assignment

---

[7]Mr. and Mrs. Marks commenced their lawsuit against Benson-Doty claiming the right to payment on the SeaFirst note and purporting to "accelerate" it, even before SeaFirst did. However, any action by them against Benson-Doty would have been a breach of contract claim based on the assignment, not an action based on the note. Mr. and Mrs. Marks were not the holders of the note. It had not been negotiated to them. Negotiation is the transfer of an instrument in such form that the transferee becomes a holder and can enforce payment. RCW 62A.3-202; RCW 62A.3-301.

because it had not been disclosed as an asset nor administered by the bankruptcy trustee.[8]

█ Benson-Doty contend that if they prevail, they are entitled to attorney fees because the SeaFirst note requires payment of attorney fees "by the payee" in the event of default and RCW 4.84.330 makes the obligation mutual. We disagree. First, the note provides for attorney fees in the event of default by the maker-borrower, not the payee. Benson-Doty were neither makers nor payees on the note. Second, the assignment, not the note, was central to the controversy. *Hemenway v. Miller*, 116 Wn.2d 725, 742-43, 807 P.2d 863 (1991). The assignment contains no attorney fees provision.

We reverse.

SHIELDS, A.C.J., and MUNSON, J., concur.

Review denied at 118 Wn.2d 1001 (1991).

---

[8]Benson-Doty also contend the SeaFirst note was discharged by operation of 11 U.S.C. § 524. We will not address this contention since this matter is best disposed of on other grounds.