34 F.3d 1073
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Daniel L. PAYETTE, Plaintiff-Appellant,
v.
SAFETY-KLEEN CORPORATION; Marc Griffin; Jane Doe Griffin,
Mark and Jane Doe Griffin, and The Community
Property Thereof, Defendants-Appellees.
 No. 93-35410.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 1, 1994.*
Decided Aug. 25, 1994.
 
 Before: ALARCON, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Daniel Payette ("Payette") appeals from the order granting summary judgment in favor of the Safety-Kleen Corporation ("Safety-Kleen"). Payette contends that the district court erred in determining that no cause of action existed for either breach of contract or defamation. We affirm because we find no merit to either of Payette's arguments.
 
 I.
 
 3
 Payette asserts that there are genuine issues of material fact in dispute concerning whether Safety-Kleen had just cause to terminate his employment. We review de novo a district court's grant of summary judgment. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992).
 
 
 4
 In 1981, Payette entered into a written employment agreement with Safety-Kleen. The agreement states that "[t]he employment of the Employee under this agreement shall be subject to termination by the Employer at any time by reason of improper conduct, non-performance or incompetent performance of duties, unexcused absence from work or other proper cause."
 
 
 5
 Because this is a diversity case, we must apply Washington state substantive law to determine whether Safety-Kleen had proper cause to fire Payette. Erickson v. Desert Palace, Inc., 942 F.2d 694, 695 (9th Cir.1991) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)), cert. denied, 112 S.Ct. 1476 (1992). Under Washington law, just cause, which Payette equates with proper cause, is defined as a "fair and honest cause or reason, regulated by good faith on the part of the party exercising the power." Baldwin v. Sisters of Providence in Washington, Inc., 769 P.2d 298, 304 (Wash.1989). "A discharge for 'just cause' is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true." Id.
 
 
 6
 The undisputed evidence indicates that Payette submitted expense reimbursement claims purportedly incurred for the payment of meals during which business was conducted with six Safety-Kleen employees during June and July of 1990. On July 30, 1990, prior to terminating Payette, Mark Griffin ("Griffin"), Payette's immediate supervisor, spoke with these employees to determine if they had a business lunch or dinner with Payette on the date corresponding to Payette's expense reimbursement form. Each of these individuals denied having a business meal with Payette on those dates. Additionally, in his certified statement in response to the defendants' motion for summary judgment, Payette stated that on August 10, 1990, prior to his termination, he informed Griffin and Mike Rome, Safety-Kleen's field manager, that the places listed on the business expense reports were not the actual places where he had taken the employees. Payette also acknowledged that "I may be a poor money manager and guilty of sloppy expense reporting, but I am not a thief." (emphasis added).
 
 
 7
 Safety-Kleen offered Griffin's declaration in support of its motion for summary judgment. Griffin alleged that "[t]his was not the first time Mr. Payette was disciplined concerning his business expense reports. Mr. Payette had previously received a written reprimand from my predecessor as Regional Manager that he was to discontinue submitting cash receipts when documenting his entertainment expenses." In late 1989, Safety-Kleen distributed a Code of Ethical Business Conduct ("1989 Code") to all employees. The Code states that "[e]ach transaction must be recorded and described in accordance with its true nature and Company policy.... Any falsification of Company documents may result in immediate suspension and could further subject the employees to discharge and civil and/or criminal prosecution." The 1989 Code was "intended to govern the actions and business relationships of ... Regional Sales Managers." Payette's business relationships, as a regional sales manager, included entertaining customers and Safety-Kleen sales representatives. Payette referred to the false claims he filed as "legitimate business expenses." (emphasis added). Thus, his business expense claims for reimbursement for entertaining Safety-Kleen employees are governed by the 1989 Code.
 
 
 8
 Safety-Kleen also introduced as evidence the declaration of James Isanhart, Vice-President of Sales for the Western Region. Isanhart stated that he attended a meeting in January 1990, at which Payette was present. "One of the purposes of the meeting was to promote the Code of Ethics [sic] and affirm its application to all aspects of the company's business." (emphasis added). Isanhart's declaration demonstrated that Payette was on notice that submitting false business expense claims might result in his termination.
 
 
 9
 Payette asserts that the evidence he presented in opposition to the motion for a summary judgment demonstrates that there is a genuine issue of material fact regarding whether he was instructed by his supervisors to "spread out" his business expense reports. He alleges that his prior managers, Dan Sempa and John Sousa, approved of the manner in which he had submitted his business expense reports. Payette alleges that Sempa informed him to "spread out" his entertainment expenses so that they would appear reasonable. Payette further contends that he continued this practice when Sousa replaced Sempa as his manager. Payette states that there is no evidence that he sought reimbursement for expenses that were not related to the conduct of business.
 
 
 10
 Evidence that Sousa and Sempa permitted Payette to "spread out" expenses does not raise a genuine issue of material fact regarding whether he was discharged for just cause. The alleged authority granted to Payette to "spread out" his business expenses by means of fictitious dates was nullified by Safety-Kleen's issuance of the 1989 Code. The 1989 Code specifically notified all employees, including Payette, that hereafter, falsification of company documents relating to any business relationships could result in termination of employment.
 
 
 11
 Sempa was Payette's manager until 1987. Therefore, the method of classifying expenses which Sempa approved occurred prior to Safety-Kleen's issuance of the 1989 Code. Sousa replaced Sempa as Payette's manager in 1987. Griffin became Payette's manager in April 1990. Payette has not offered any evidence which demonstrates that, subsequent to the January 1990 meeting in which he was expressly informed that the 1989 Code applied to all aspects of the company's business, Sousa authorized him to "spread out" expenses. Additionally, Payette has not demonstrated that Griffin ever authorized him to do so. In fact, Griffin terminated Payette's employment because he submitted inaccurate business expense reports.
 
 
 12
 Payette described in his declaration the procedure he followed in submitting business expense reports during his last year of employment. He did not allege, however, that any supervisor approved the "spread out" of his business expenses after January 1990. As noted above, the 1989 Code was specifically intended to prohibit such practices by employees.
 
 II.
 
 13
 As further support for his position that he has demonstrated that there are genuine issues of material fact in dispute, Payette cites Brady v. Daily World, 718 P.2d 785 (Wash.1986), Gaglidari v. Denny's Restaurants, Inc., 815 P.2d 1362 (Wash.1991), and Baldwin v. Sisters of Providence, 769 P.2d 298 (Wash.1989). His reliance on these cases is misplaced.
 
 
 14
 In Brady, the plaintiff had been employed as a pressman at Daily World, a newspaper. Brady, 718 P.2d at 785. He was fired for being intoxicated while at work. Id. at 786. Brady filed an action against Daily World for termination of his employment without just cause. Id. at 785. The Supreme Court of Washington reversed the grant of summary judgment in favor of Daily World because there were genuine issues of material fact in dispute. Id. at 788. The disputed factual issues included whether Brady was ever intoxicated while at work, whether "being under the influence" is the same as being intoxicated, and whether the fact that Brady received a favorable job evaluation shortly before he was discharged without any reference to his drinking habits cast doubt on the stated reasons for terminating his employment. Id.
 
 
 15
 Unlike the situation in Brady, there are no genuine issues of material fact in dispute regarding the basis for terminating Payette's employment. In support of its motion for a summary judgment, Safety-Kleen introduced the statements of six employees, who stated that they did not accompany Payette at business meals, as represented in Payette's business expense reports. Additionally, Payette admitted that he submitted inaccurate business expense reports. Payette was on notice that falsifying business documents might result in his termination.
 
 
 16
 In Gaglidari, the plaintiff, a bartender, was terminated after she was involved in a fight with a customer in violation of company policy. Gaglidari, 815 P.2d at 1364-65. The plaintiff was awarded damages. Id. at 1365. The defendant appealed. Id. The Supreme Court of Washington held that based upon the record, it was "unable to determine on what basis defendant concluded that plaintiff was to blame for or was a voluntary participant in the physical altercation with Porthen [the customer]." Id. at 1369. Accordingly, the court remanded the case to resolve the issue of whether there was substantial evidence to support Denny's reasonable belief that Gaglidari was involved in a fight with a customer. Id.
 
 
 17
 Gaglidari is distinguishable for the same reasons as Brady. Namely, there is no genuine issue of material fact in the record regarding whether Payette falsified business expense reports.
 
 
 18
 Payette cites Baldwin for the proposition that "genuine issues of material fact exist as to whether Safety-Kleen's decision to terminate Payette under the circumstances of this case was arbitrary and capricious, and whether Safety-Kleen acted in good faith in exercising its decision to terminate Payette." In Baldwin, the defendants appealed from an adverse judgment entered after the trial of a wrongful termination action filed by Baldwin, a respiratory therapist at a hospital operated by the defendants. Baldwin, 769 P.2d at 299. The Supreme Court of Washington reversed in part because the trial court gave an incorrect jury instruction regarding the definition of just cause. Id. at 304. Contrary to Payette's assertion, Baldwin merely stands for the proposition that a jury must be properly instructed on the issue of just cause for termination. Id.
 
 
 19
 The evidence presented by Safety-Kleen is sufficient to prove that Payette was terminated for proper cause because he filed false records relating to business expenses incurred in entertaining fellow employees. Payette has admitted that he filed false business records after he was notified that such conduct was proper cause for discharge. Evidence that his supervisors condoned or encouraged false business records prior to the issuance of the 1989 Code does not justify the filing of false reports after he was notified that any false reports would be grounds for termination. The fact that Payette did not cause any monetary loss to the company by submitting falsified business expense reports does not excuse his defiance of written company policy. The district court did not err in concluding that Payette had failed to demonstrate that a genuine issue of material fact is in dispute concerning whether proper cause existed to terminate his employment.
 
 III.
 
 20
 Payette also contends that there is a genuine issue of material fact in dispute regarding whether Safety-Kleen made defamatory statements concerning the basis for his termination. The district court granted summary judgment in favor of Safety-Kleen on this claim because the undisputed facts demonstrated that the declaration was true.
 
 
 21
 To establish a claim for defamation under Washington law, the plaintiff is required to demonstrate the following four elements: (1) a false statement made by the defendant; (2) an unprivileged communication; (3) fault; and (4) damages. Guntheroth v. Rodaway, 727 P.2d 982, 984 (Wash.1986). "In order to establish a prima facie case for purposes of resisting [Safety-Kleen's] motion for summary judgment, [Payette] must provide facts from which a jury could find that each element of defamation exists." Id. Payette argues that he satisfied his burden because he presented evidence that a former employee of Safety-Kleen received information that Payette was terminated because he stole from the company.
 
 
 22
 In support of his defamation claim, Payette introduced as evidence the certified statement of Benny Taylor. In his statement, Taylor alleged the following facts under penalty of perjury:
 
 
 23
 I was told by a Safety-Kleen employee that ... 'they' were building a case against Dan Payette while he was on vacation and that he would be terminated upon his return. I was further told that the reason for his termination was that he had falsified his business expense reports....
 
 
 24
 The gist of this statement and what I understood the speaker to mean was that Dan was stealing or attempting to steal from the company by seeking reimbursement for expenses for which he was not entitled to reimbursement.
 
 
 25
 I am not absolutely positive of the name of the individual who told me this but I am fairly certain that it was a Safety-Kleen employee at the time.
 
 
 26
 Taylor's statement does not establish a prima facie case of defamation because Taylor failed to demonstrate that an agent of Safety-Kleen made a defamatory statement regarding whether Payette was a thief. Furthermore, Payette admitted that he filed inaccurate business expense reports. Safety-Kleen terminated Payette's employment because he submitted false business records, not because it had concluded that he was a thief.
 
 IV.
 
 27
 Safety-Kleen's request for sanctions is DENIED. The judgment of the district court in favor of Safety-Kleen is AFFIRMED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 28
 While I agree that summary judgment was proper on the defamation claim, I dissent because Payette provided evidence sufficient to establish a genuine issue of material fact as to his breach of contract claim.
 
 
 29
 Payette's certified declaration describes the training he received from his previous boss, Dan Sempa. Sempa told him to "treat the employees who worked under my supervision well when I was visiting them" and that "Consequently, whenever, I took employees out, I always paid the bill." Apparently this strategy worked. During his seven years in Seattle, he always ranked in the top third of all Safety-Kleen salesmen nationwide, became the top "abrasive salesperson" nationwide, and won several other awards for high sales.
 
 
 30
 But it costs money to make money. While entertaining people under his supervision, Payette would spend larger amounts of money than would look good to the home office. Payette says Sempa told him to "spread out" these large expenses into several smaller, more reasonable expenses. This technique was used without criticism for years. Payette says that "At no time during my employment with Safety-Kleen or with any other employer did I ever seek reimbursement for monies I had not expended."
 
 
 31
 In his deposition, Michael Rome, the personnel manager, said that he believed Dan Sempa told Payette to spread out his expenses. Rome described Sempa as "being very, very wild and very colorful and numerous, numerous borderline activities, just a character, a cowboy." Sempa was "one of many" who used "unorthodox measures of expense reporting." This is a believable story. It is not grounds for firing to charge the true amount for expenses in a false way because the boss has so ordered.
 
 
 32
 The 1989 Code of Ethical Business Conduct on which the majority relies does not control this case. Paragraph III of the 1989 Code (documentation of transactions) is intended to make sure that "the customer's" transactions are accurately documented. This standard prevents Safety-Kleen employees from defrauding customers. The context of the statement relied on by the company is a requirement that "the customer's ... invoice reflect the exact nature of each transaction." Payette's expense account submissions had nothing to do with customers' invoices. They were invoices to the company for his selling expenses, not invoices to customers for goods sold.
 
 
 33
 Nor did the company establish without a genuine issue that Payette was warned not to do what he did, or disciplined for it. The "warning" of Jan. 9, 1989 only directs Payette to get credit card receipts for entertainment expenses instead of cash receipts. Cash receipts at restaurants are usually just the green stub at the bottom of the bill that the customer fills out himself. Safety-Kleen was asking for was a credit card receipt filled out by the restaurant instead of a cash receipt filled out by Payette. The company has not provided evidence that it told Payette to quit "spreading" one true, large expense over several smaller, fictional meals.
 
 
 34
 Payette submitted cognizable evidence that the real reason he was fired was a personality conflict with Vice-President Isanhart. Payette said "On numerous occasions when I would see Isanhart, he would make comments about my weight. One of the comments I recall as being particularly stinging was his reference to me as a 'fat old pregnant lady.' " Payette's declaration sets out several other incidents in which he clashed with Isanhart.
 
 
 35
 Payette has provided enough evidence so that a trier of fact could permissibly decide that he was not fired for just cause. It could conclude, if Payette's evidence were believed, that the company had ordered him to "spread" expenses as he did, and fired him because Isanhart did not like him because he was fat. This case should have gone to trial to find out whether Payette was fired for just cause or not.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3