112 P.3d 540 (2005)
127 Wash.App. 478
Alan DeATLEY and Debra DeAtley, husband and wife, Appellants,
v.
Lynn BARNETT, Marlene Barnett, and Lookout Point Partners, Respondents.
Nos. 22780-4-III, 22977-7-III.
Court of Appeals of Washington, Division 3, Panel One.
May 17, 2005.
Reconsideration Denied June 23, 2005.
*541 James A. Perkins, Attorney at Law, Yakima, WA, for Appellants.
Annette T. Fitzsimmons, Attorney at Law, University Place, WA, Margaret Y. Archer, Attorney at Law, Tacoma, WA, for Respondents.
BROWN, J.
¶ 1 This is a contract dispute to enforce a first right of refusal brought by Alan and Debra DeAtley against developers Lynn and Marlene Barnett and the Barnetts' partnership, Lookout Point Partners (the Barnetts unless otherwise indicated). The Barnetts traded land and the first right of refusal for road work to be done by the DeAtleys. After the Barnetts discovered an intervening DeAtley bankruptcy, the trial court granted *542 summary dismissal of the complaint on the Barnetts' theory that the DeAtleys' bankruptcy discharged the Barnetts' first right of refusal obligations. The judge awarded the Barnetts attorney fees under the contract relating solely to the dismissal motion. The bankruptcy and judicial estoppel vitiate the DeAtleys' claim. We affirm and grant the Barnetts and Lookout Point their attorney fees here.

FACTS
¶ 2 In January 1986, the Barnetts purchased around 500 acres of undeveloped land in Yakima County by real estate contract. In February 1986, the Barnetts entered into the Lookout Point partnership with John and June Cotten to develop the land.
¶ 3 In January 1988, the Barnetts contracted with the DeAtleys for road work on the land in exchange for 86 acres and a first right of refusal. Mr. DeAtley agreed to "pioneer" the road and later complete it. The parties disputed if the 1988 pioneering work done was according to the contract, but agree the final road work was never completed. The contract provided in the event Mr. Barnett "desires to sell or assign his contract with Anderson or to make any sales of property of three lots or tracts or more, that he will grant to DeAtley the first right of refusal to acquire same." Clerks Papers (CP) at 806.
¶ 4 In 1990, Mr. DeAtley met with Mr. Cotten after Mr. Cotten became ill and wanted to sell his partnership interest, but Mr. DeAtley decided against it. The DeAtleys' right of first refusal was not mentioned. In early 1991, the Barnetts bought out the Cottens' partnership interest. In July 1991, George A. Lagerquist and Henry and Nova Van Baalen joined the partnership, like the Cottens, to "own, maintain, develop, sell and otherwise deal with" the land. CP at 865.
¶ 5 In 1992, the DeAtleys petitioned for Chapter 7 bankruptcy relief in New Mexico, listing Mr. Barnett as a creditor for the road construction obligation. The DeAtleys did not separately list their right of first refusal as an asset. Mr. Barnett received notice of the bankruptcy, and later said he had only "a vague recollection" of it. CP at 518. The DeAtleys discharged the Barnett obligation in the 1992 New Mexico Bankruptcy.
¶ 6 In May 1997, the DeAtleys sued the Barnetts, alleging the 1991 transfers violated the DeAtleys' right of first refusal. The Barnetts denied the allegations, asserting several affirmative defenses, including waiver, estoppel, laches, and failure to perform conditions precedent regarding the completion of the final road.
¶ 7 Just before the scheduled 2003 trial date, the DeAtleys unsuccessfully moved to amend their complaint to add specific performance. On the day of trial, after expedited briefing, the DeAtleys' successfully argued the 1991 transfers triggered the DeAtleys' right of first refusal. About this time, when deposing Mr. DeAtley's father the Barnetts learned of the New Mexico bankruptcy. Investigating, the Barnetts learned the DeAtleys discharged the underlying obligation in the New Mexico bankruptcy. Immediately, the Barnetts' requested dismissal, successfully arguing the bankruptcy vitiated the first right of refusal. The DeAtleys' motion for reconsideration, based partly on the DeAtleys' alleged transfer of the parties' contract to a wholly-owned subsidiary, Wildones, Inc., d/b/a AD3 Company, was denied.
¶ 8 The Barnetts were partially successful in asking for attorney fees under the contract. The trial court limited the fees and costs to those associated with the motion to dismiss. The DeAtleys appeal the dismissal, the denial of their request for partial summary judgment regarding the final road issues, and the denial of their request to amend their complaint. The Barnetts cross-appeal the initial summary judgment order, regarding the DeAtleys' breach of contract claims and the partial award of attorney fees. The appeals have been consolidated.

ANALYSIS

A. Impact of Bankruptcy
¶ 9 The dispositive issue is whether the trial court erred in dismissing the DeAtleys' complaint based upon its conclusion that the bankruptcy discharge of the Barnett-DeAtley *543 contract obligation precluded the DeAtleys' right of first refusal claims. We review questions of law de novo. Wolstein v. Yorkshire Ins. Co., 97 Wash.App. 201, 206, 985 P.2d 400 (1999).
¶ 10 The DeAtleys were required to disclose all assets, including potential causes of action in their bankruptcy petition. 11 U.S.C.A. § 521(1), Fed. R. Bankr.P. 1007. A discharged debtor lacks legal capacity to pursue an unscheduled claim simply because the trustee, having no knowledge of the claim, took no action with respect to the claim. Linklater v. Johnson, 53 Wash.App. 567, 570, 768 P.2d 1020 (1989); Marks v. Benson, 62 Wash.App. 178, 184-85, 813 P.2d 180 (1991). Even so, the DeAtleys contend their contract right assignment to AD3 Company before filing for bankruptcy effectively saved the first right of refusal.
¶ 11 However, if the DeAtleys wanted to assume the benefits of the allegedly triggered right of first refusal, they would have to assume the underlying obligation, the contract obligation to complete the road. Since the DeAtleys chose to discharge the burdens of that contract obligation and did not list their allegedly matured right of first refusal as an asset, we reason they lost their right to claim benefits under the right of first refusal. Accordingly, we conclude the DeAtleys lacked standing to commence their breach of contract complaint.
¶ 12 Moreover, judicial integrity, finality of judgments and respect for the judicial process bar the DeAtleys' claim. Together these considerations are referred to as the Washington doctrine of judicial estoppel. See, e.g., Markley v. Markley, 31 Wash.2d 605, 614-15, 198 P.2d 486 (1948); Johnson v. Si-Cor, Inc., 107 Wash.App. 902, 906, 28 P.3d 832 (2001).
¶ 13 Nonexclusive factors promote court discretion in applying judicial estoppel: "(1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; (6) it must appear unjust to one party to permit the other to change." Falkner v. Foshaug, 108 Wash.App. 113, 125 n. 35, 29 P.3d 771 (2001) (quoting Raymond v. Ingram, 47 Wash.App. 781, 785, 737 P.2d 314 (1987)). The focus is upon the inconsistent position. Falkner, 108 Wash.App. at 125, 29 P.3d 771.
¶ 14 Judicial estoppel has been recently applied in a similar bankruptcy context. Cunningham v. Reliable Concrete Pumping, Inc. 126 Wash.App. 222, 108 P.3d 147 (2005). In Cunningham, Division One of this court invoked judicial estoppel to approve the summary dismissal of a personal injury claim when the plaintiffs had previously petitioned for bankruptcy, but failed to list in their bankruptcy schedules a third-party personal injury claim arising out of a workplace injury.
¶ 15 On the federal level judicial estoppel is well entrenched. In New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), the United States Supreme Court invoked judicial estoppel, describing the doctrine as preventing "`perversion of the judicial process'" by not allowing parties to "`gain an advantage by litigation on one theory, and then seek[ing] an inconsistent advantage by pursuing an incompatible theory.'" Id. at 749, 121 S.Ct. 1808 (quoting In re Cassidy, 892 F.2d 637, 641, cert. denied, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477, at 549 (2002)).
¶ 16 The DeAtleys inconsistently received bankruptcy relief, and thereafter sought contradictory relief. Under these facts, we conclude judicial estoppel applies here to foreclose the DeAtleys' claim.
¶ 17 In sum, the lack of standing and judicial estoppel leads us to conclude the trial court did not err in dismissing the DeAtleys' complaint or in denying reconsideration. Therefore, it is unnecessary to analyze the parties other issues and contentions except those related to the Barnetts' attorney fees.

*544 B. Attorney Fees at the Superior Court
¶ 18 The issue is whether the trial court erred in limiting the Barnetts' award of attorney fees to those incurred to bring their motion to dismiss. The Barnetts contend the court erred as a matter of law in finding the Barnetts delayed in bringing their motion to dismiss without just cause because the delay was caused by the DeAtleys' delay in providing requested discovery.
¶ 19 We review trial court's attorney fees award for an abuse of discretion. Mahler v. Szucs, 135 Wash.2d 398, 435, 957 P.2d 632 (1998). Abuse of discretion occurs when the trial court's decision rests on untenable grounds or untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 20 The trial court reasoned the bankruptcy issue was known to the Barnetts well prior "to the end of 2003 and now here in 2004, the motion was always available to the defendants." Report of Proceedings at 3. The record supports the trial court's reasoning. For example, Mr. Barnett admitted he received notice of the DeAtleys' bankruptcy proceeding in 1992. Mr. Barnett assumed the DeAtleys abandoned the road building project so the bankruptcy notice did not make "an impression" on him. CP at 519. While the bankruptcy schedules were not received until 2003, the discharge of the road building obligation was sufficiently known to him to charge him with notice of the critical fact bearing upon the viability of the first right of refusal.
¶ 21 We defer to the trial court's personal and exhaustive contact with the issue. We limit our review to whether the judge's exercise of his discretion was manifestly unreasonable or based on untenable grounds or reasons. Mr. Barnett's recollection of the bankruptcy notice, while vague, was a tenable basis for the trial court to find the motion to dismiss could have been brought sooner. The trial court did not abuse its discretion in limiting the award.

C. Attorney Fees on Appeal
¶ 22 The Barnetts and Lookout Point request fees and costs on appeal pursuant to RAP 18.1. Attorney fees are awarded pursuant to contract, statute, or a recognized ground of equity. Wilkerson v. United Inv., Inc., 62 Wash.App. 712, 716, 815 P.2d 293 (1991). By statute, attorney fees are awarded to the prevailing party in an action on a contract that specifically provides for attorney fees and costs incurred to enforce its provisions. RCW 4.84.330.
¶ 23 The parties' agreement provides, "In the event any suit or action shall be instituted under this Agreement ... the prevailing party in such suit or action shall be entitled to reasonable attorney's fees, together with such other assessable costs." CP at 807. A contract providing for the payment of attorney fees "`includes both fees necessary for trial and those incurred on appeal as well.'" Boyd v. Davis, 127 Wash.2d 256, 264, 897 P.2d 1239 (1995) (quoting Granite Equip. Leasing Corp. v. Hutton, 84 Wash.2d 320, 327, 525 P.2d 223 (1974)). As the prevailing parties on appeal, the Barnetts and Lookout Point are entitled to their attorney fees and costs here.
¶ 24 Affirmed.
WE CONCUR: KATO, C.J., and SWEENEY, J.