173 P.3d 300 (2007)
Matthew SKINNER, an individual, Appellant/Cross-Respondent,
v.
Gary D. HOLGATE and Judy Holgate, individually and the marital community comprised thereof; Adam Holgate and Jane Doe Holgate, individually and the marital community comprised thereof; Westlands Resources Corporation, a Washington corporation; Westlands Holding Company, Inc., a Washington corporation, Respondents/Cross-Appellants.
No. 35506-0-II.
Court of Appeals of Washington, Division 2.
November 27, 2007.
*301 Bradley Judson Woodworth, Attorney at Law, Portland, OR, for Appellant/Cross-Respondent.
Richard Antoine Paroutaud, Mano McKerricher Paroutaud, Chehalis, WA, Philip Albert Talmadge, Talmadge Law Group PLLC, Tukwila, WA, for Respondent/Cross-Appellant.
BRIDGEWATER, J.
¶ 1 Matthew Skinner appeals from a summary judgment wherein the trial court applied the doctrine of judicial estoppel and granted summary judgment against Skinner. Skinner filed for bankruptcy but failed to disclose an estimated $1,000,000 claim against Holgate and received a discharge in bankruptcy, finding that there were no assets. Judicial estoppel is an equitable doctrine precluding a party from asserting one position in a court proceeding and later seeking advantage by taking an inconsistent position. We hold that the trial court wherein Skinner later made a claim against Holgate, after his discharge, did not abuse its discretion in granting summary judgment against Skinner. We also affirm the trial court's refusal to impose attorney fees and do not grant fees to Holgate on appeal.

FACTS
¶ 2 Matthew Skinner is a professional businessman. In 1998, he began negotiating for the sale of the Capitol Theater building in Olympia, Washington, with owner Andrew Crow. Although Skinner negotiated the sale, he did not have the financial means to complete the transaction. Skinner then approached Gary Holgate about joining him in purchasing the building.
¶ 3 Holgate is a real estate businessman in southwest Washington and owner of the Westlands Resources Corporation (Westlands). Holgate agreed to form a joint venture with Skinner called GM Properties. Holgate and Skinner opened a checking account under Westlands, d/b/a GM Properties. Skinner, Holgate, and Holgate's son, Adam Holgate, were signatories on the account.
¶ 4 Crow and Westlands executed a five-and-one-half-year lease option on the theater. The lease terms included rent of $4,500 per month and an option price of $374,173.50, which could be exercised at the end of the lease term on January 31, 2004. Immediately thereafter, Skinner circulated a letter to the existing tenants of the Capitol Theater building informing them that he and Westlands had leased the theater from Crow.
¶ 5 GM Properties took possession of the Capitol Theater building, and Holgate and Skinner began managing the various subtenant rentals, making necessary repairs on the building. From 1999-2002, Skinner received draws or loans totaling $13,212.80 from the GM Properties checking account.
¶ 6 On May 2, 2001, Skinner formed a new corporation, Washington Retailtainment Corporation (Retailtainment). He was the only shareholder, officer, and director of Retailtainment.
¶ 7 At about the same time that Skinner formed Retailtainment, Westlands acquired title to a chiropractor's office building (South *302 Gold Property). Westlands then sold the building to Crow for $110,000. Skinner claims that this building was acquired for the benefit of GM Properties, in joint venture with Crow. The purpose of the South Gold Property was to develop an adult video store.
¶ 8 Holgate later decided not to participate in the adult video store and left all dealings related to the store to Skinner and Crow. From April 27, 2001 through June 25, 2002, Crow gave Skinner and/or Retailtainment 26 checks totaling $67,000. Skinner claims the funds were used to either remodel the building or were reimbursements for funds he personally spent on the Capitol Theater building.
¶ 9 In addition, Crow and GM Properties gave Skinner a $30,000 loan. The handwritten loan agreement provided that Skinner begin repaying the loan on January 1, 2002. The loan agreement further provided that in the event of any default, Skinner agreed to relinquish one percent of his interest in the Capitol Theater building for each $3,000 lost. Skinner never began repaying the loan.
¶ 10 On April 3, 2002, a confession of judgment against Skinner was entered in unrelated state court litigation. Holgate then took Skinner off of the GM Properties checking account. In May 2002, Skinner and his partners met to discuss his interest in the Capitol Theater building.
¶ 11 On July 12, 2002, Skinner, assisted by a paralegal, filed for bankruptcy. In his schedule of assets, Skinner did not disclose: (a) his interest in GM properties; (b) his claimed interest in Capitol Theater building; (c) his claims against Crow, Holgate, Westlands, or any of the other defendants, regarding any joint ventures; (d) any of the income, draws, or loan proceeds Skinner had received from GM Properties; (e) the loan Skinner owed to Crow or GM Properties; or (f) any of the sums Crow paid to Retailtainment and Skinner.
¶ 12 The bankruptcy trustee held the first meeting of creditors in August 2002. Skinner testified under oath that he had no assets, claims, or income that was not already set forth in the bankruptcy schedules. Skinner also testified that no one owed him money. The trustee then filed a No Assets Report on August 19, 2002.
¶ 13 Meanwhile, Skinner attempted to negotiate a resolution and final accounting as to the Capitol Theater building and South Gold Property. Skinner wrote three settlement letters to Holgate between September 17 and October 6, 2002. On October 16, 2002, Skinner received his bankruptcy discharge and on October 30, 2002, the case was closed by court order. Between December 4, 2002 and February 2, 2003, Skinner wrote three more letters demanding valuations for the theater and other "properties." CP at 196.
¶ 14 In February 2004, Skinner sued Holgate, Crow, and Westlands. Two months later, the bankruptcy trustee discovered Skinner's lawsuit and promptly filed a Notice of Removal, at which point it became part of the bankruptcy estate. Both Westlands and Crow filed proofs of claim.
¶ 15 Holgate, Crow, and Westlands intended to settle the claim by paying the trustee $35,000, whereby the trustee would dismiss the superior court case against them with prejudice. Several other filings took place before a second settlement was proposed. The second settlement agreement provided that a third party would purchase the claim against Holgate for $45,000, thereby preserving Skinner's claim. Skinner would also purchase the South Gold Property from Crow, who would then withdraw his proof of claim.
¶ 16 The bankruptcy court approved the second settlement and noted that Skinner should be allowed his day in court. The case was then remanded to Thurston County Superior Court.
¶ 17 Skinner filed a second amended complaint in Thurston Country Superior Court and Holgate, Crow, and Westlands (hereinafter Holgate) moved for summary judgment on grounds of judicial estoppel. The trial court found that Skinner failed to disclose his "significant partnership relationship [with Holgate] in this matter, his interest in GM Properties, his many business transactions, perhaps assets that he owned jointly or debts that he owed to these business partners." RP (July 14, 2006) at 14. The trial court went on to say that there is "nothing in the *303 record to suggest he didn't know that he had some interest in the partnership", RP (July 14, 2006) at 14, and that Skinner was "required at every step of the way to disclose both his assets and his debts." RP (July 14, 2006) at 14.
¶ 18 The trial court granted summary judgment. Holgate filed a motion for attorney fees on alternate grounds. The trial court denied the motion for attorney fees. Skinner appeals and Holgate cross-appeals the trial court's attorney fees ruling.

ANALYSIS

I. Standard of Review
¶ 19 Thurston County Superior Court granted summary judgment in favor of Holgate. We review a summary judgment de novo, engaging in the same inquiry as the trial court. City of Sequim v. Malkasian, 157 Wash.2d 251, 261, 138 P.3d 943 (2006). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). All facts are considered in the light most favorable to the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005) (citing Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 516, 799 P.2d 250 (1990)).

II. Judicial Estoppel
¶ 20 "Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." Arkison v. Ethan Allen, Inc., 160 Wash.2d 535, 538, 160 P.3d 13 (2007) (citing Bartley-Williams v. Kendall, 134 Wash.App. 95, 98, 138 P.3d 1103 (2006)). The doctrine serves three purposes: (1) to preserve respect for judicial proceedings; (2) to bar as evidence statements by a party that would be contrary to sworn testimony the party gave in prior judicial proceedings; and (3) to avoid inconsistency, duplicity, and waste of time. Cunningham v. Reliable Concrete Pumping, Inc., 126 Wash. App. 222, 225, 108 P.3d 147 (2005). We review a trial court's decision to apply the equitable doctrine of judicial estoppel for abuse of discretion. Arkison, 160 Wash.2d at 538-39, 160 P.3d 13. Although Arkison sets forth basic concepts concerning judicial estoppel, it is inapposite because it held that the court erred when it applied judicial estoppel against the bankruptcy trustee; Arkison did not concern the application against a debtor. Cunningham, however is directly on point because it concerned a debtor.
¶ 21 Courts will generally apply judicial estoppel to debtors who fail to list a potential legal claim among their assets during the bankruptcy proceedings but then pursue the claim after the bankruptcy discharge. Bartley-Williams, 134 Wash.App. at 98, 138 P.3d 1103. But application of the doctrine may not apply in situations where a party can reasonably explain the differing positions. Garrett v. Morgan, 127 Wash.App. 375, 379, 112 P.3d 531 (2005) (overruled in Arkison only on grounds that judicial estoppel cannot be applied to bankruptcy trustees); see also New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (judicial estoppel may be inappropriate when a party's prior position was based on inadvertence or mistake).
¶ 22 Although not an exhaustive formula, a trial court generally considers three factors when deciding to apply the doctrine of judicial estoppel: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party successfully persuaded a court to accept the party's earlier position but then creates the perception that the court was misled when it adopts a later, inconsistent position; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire, 532 U.S. at 750-51, 121 S.Ct. 1808.
¶ 23 Both the bankruptcy code and court rules impose on the debtor an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. Cunningham, 126 Wash.App. at 229-30, 108 P.3d 147. Moreover, the debtor has an express, affirmative duty to list all potential causes of action, even if he lacks knowledge about the *304 likelihood of success. Cunningham, 126 Wash.App. at 230, 108 P.3d 147.
¶ 24 Skinner relies heavily on New Hampshire in his argument that the trial court erroneously applied the doctrine of judicial estoppel. In New Hampshire, the United States Supreme Court found that the doctrine of judicial estoppel barred the state of New Hampshire from asserting a new position that was clearly inconsistent with its prior position in a different proceeding. In so holding, the Court explained that the purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. New Hampshire, 532 U.S. at 749-50 121 S.Ct. 1808 (citations omitted). The Court further held that the rule is intended to prevent a party's improper use of judicial machinery, and is therefore an equitable doctrine a court may invoke at its discretion. New Hampshire, 532 U.S. at 750, 121 S.Ct. 1808. We address each of Skinner's arguments in turn.
A. Judicial Estoppel is Appropriate when a Party Takes Contrary Positions in Different Proceedings
¶ 25 Skinner argues that the trial court erred when it applied the doctrine of judicial estoppel because it considered only the inconsistency between his original bankruptcy schedules and his position in this case. Skinner's argument is misguided.
¶ 26 "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds." State v. Perrett, 86 Wash.App. 312, 319, 936 P.2d 426 (quoting Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 168, 876 P.2d 435 (1994)), review denied, 133 Wash.2d 1019, 948 P.2d 387 (1997). We may affirm on any ground the record adequately supports. State v. Costich, 152 Wash.2d 463, 477, 98 P.3d 795 (2004).
¶ 27 During the oral ruling, the trial court noted that the integrity of the judicial system depends on people being "straightforward, forthright, and honest in their dealings with the courts." RP (July 14, 2006) at 14. It then went on to enumerate the many assets that Skinner withheld from the bankruptcy court and noted that in its review of the record, it did not find any evidence to suggest that Skinner did not know that he had some interest in the partnership with the defendants. Moreover, the trial court noted that the ongoing contact between Skinner and his partners was neither disputed nor denied, and that he "simply failed and chose not to disclose [those contacts] to the bankruptcy court." RP (July 14, 2006) at 15.
¶ 28 Skinner took contrary positions in two different proceedings. The trial court relied on the entirety of the record when it balanced the equities in favor of applying the doctrine of judicial estoppel. Furthermore, despite Skinner's argument that the trial court should have addressed other factors cited in New Hampshire, that very case held that the trial court's inquiry is inherently discretionary and fact specific, and that in enumerating these factors, the court does not "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808.
B. Judicial Estoppel is Appropriate when Judicial Acceptance of an Inconsistent Position in a Later Proceeding is Perceived as Misleading
¶ 29 Skinner argues that because the same bankruptcy court that granted his discharge later reopened the case and accepted his current position, it implicitly accepted his new position. Specifically, Skinner argues that "[t]here can be no `threat to judicial integrity' where the bankruptcy court (after its `acceptance' of the earlier position) has explicitly noted and approved the debtor's right to pursue his claim in state court." Br. of Appellant at 18-19. Again, Skinner's argument is without merit.
¶ 30 Skinner does not challenge the conclusion that a discharge order constitutes acceptance of a representation on bankruptcy schedules. This acceptance alone justifies the application of judicial estoppel. Cunningham, 126 Wash.App. at 230-31, 108 P.3d 147. Nevertheless, he urges the court to adopt his theory that his situation is not the *305 "ordinary" situation because the bankruptcy court explicitly recognized his right to pursue his claim in state court.[1] Br. of Appellant at 17.
¶ 31 In fact, Skinner seems to place great importance on the settlement negotiation that took place between himself, Holgate, and the bankruptcy trustee. It is undisputed that Holgate made a settlement offer to the trustee that contemplated payment of $35,000 and dismissal of the suit with prejudice. It is further undisputed that a higher offer was made by a third party to purchase the suit for $45,000 and preserve Skinner's claim. But Skinner is misguided in his assumption that the trial court was bound by the bankruptcy court's suggestion that he have his day in court. When the bankruptcy court reopened Skinner's case, it did not relieve the trial court of its authority to judicially estop Skinner from maintaining his suit.
¶ 32 Skinner relies on Dunmore v. United States, 358 F.3d 1107 (9th Cir.2004), to argue that the trial court's ruling was erroneous because it could have applied a permissible alternative to judicial estoppel. In Dunmore, the court approved a solution similar to the solution sought here when it allowed the bankruptcy trustee to reopen the case and administer the unscheduled claims. Dunmore, 358 F.3d at 1113 n. 3.
¶ 33 Although Skinner is correct that the trial court could have chosen an alternative to judicial estoppel, he is overlooking one very important distinction. In Dunmore, the court allowed Dunmore to remedy his inconsistent assertions by reopening his bankruptcy, "thereby giving the bankruptcy trustee an opportunity to administer the unscheduled claims." Dunmore, 358 F.3d at 1113 n. 3 (emphasis added). In so doing, the trial court provided the bankruptcy estate the option of retaining or abandoning the property. In fact, the holding of the Dunmore opinion did not directly deal with the issue of judicial estoppel but rather, only referenced the trial court's decision allowing the case to be removed to bankruptcy court rather than invoking judicial estoppel.[2]
¶ 34 Whether the trial court was bound by the bankruptcy court's ruling has already been decided. In Garrett, we relied on In re Dewberry, 266 B.R. 916 (Bankr.S.D.Ga.2001), a bankruptcy court decision holding that "`the Court where the . . . case is pending has exclusive jurisdiction to conclude whether Debtor's conduct here was so tainted as to warrant imposition of [judicial estoppel] in the case pending there.'" Garrett, 127 Wash.App. at 382, 112 P.3d 531 (quoting Dewberry, 266 B.R. at 920-21). The lack of reported decisions imposing judicial estoppel based on facts comparable to Skinners is of little significance. The trial court judge was "`fully equipped to . . . reach a conclusion as to whether judicial estoppel should apply.'" Garrett, 127 Wash.App. at 383, 112 P.3d 531 (quoting Dewberry, 266 B.R. at 921).
C. Judicial Estoppel is Appropriate When a Party Derives an Unfair Advantage.
¶ 35 Skinner next argues that to the extent that the trial court relied on factual findings not supported by the record, it abused its discretion by failing to elaborate on the benefits or advantages he gained. Once again, Skinner's argument is without merit.
¶ 36 Skinner claims that because Holgate participated in the negotiation settlement of the claim with the bankruptcy trustee, neither party received an unfair advantage or detriment. Skinner argues that Holgate could have negotiated for the dismissal of the case with prejudice. Skinner also argues that any benefit he might receive in prevailing would be fairly earned because it is unclear whether he would have prevailed.
*306 ¶ 37 Skinner had a duty to carefully schedule his assets. By failing to do so, he attempted to deceive the bankruptcy court and retain the benefit of his claims. We hold that the trial court did not abuse its discretion when it found that Skinner derived an unfair advantage when he breached his duty to schedule all of his assets. His no asset discharge was a benefit because he sought to pursue a claim outside the bankruptcy court. And the payment on his behalf to retain the $1,000,000 claim was definitely a benefit, especially in that the claim was not made until after one year when the discharge could not be re-opened or overturned. See 11 U.S.C. § 727 (stating a creditor or trustee's ability to set aside discharge for fraud is barred after one year from discharge); see also Bartley-Williams, 134 Wash.App. at 99, 102, 138 P.3d 1103 (finding judicial estoppel is correctly applied to bar a party taking an inconsistent position from benefiting from it), accord Hamilton, 270 F.3d at 785; Cunningham, 126 Wash. App. at 230-31, 108 P.3d 147. But this benefit alone would permit the application of judicial estoppel. Cunningham, 126 Wash.App. at 230-31, 108 P.3d 147.
D. Inadvertence Exists Only When the Debtor Lacks Knowledge or Has No Motive to Conceal
¶ 38 Skinner argues that his state of mind is relevant because it helps to explain his reasons for failing to schedule his assets. Again, this argument lacks merit.
¶ 39 Skinner defends by stating that: (1) he "did not believe that he had disputes" with Holgate, (2) he was not familiar with the concept of contingent or unliquidated claims, (3) he did not understand at the time that he had a potential claim, (4) he was assisted by a paralegal, (5) he should not be punished as a pro se debtor for failing to understand sophisticated concepts, and (6) the Trustee did not properly follow up with other questions that would have revealed his unscheduled assets. Br. of Appellant at 23.
¶ 40 Although judicial estoppel may not apply in cases of simple error or inadvertence, deliberate or intentional manipulation, which can be inferred from the record, mandates such a ruling. Cunningham, 126 Wash.App. at 234, 108 P.3d 147. Division One of this court held that "the debtor's failure to satisfy its statutory disclosure duty is `inadvertent' only when, in general, the debtor either lacks knowledge . . . or has no motive for their concealment." Cunningham, 126 Wash.App. at 234, 108 P.3d 147 (citations omitted). But here, Skinner knew that he had a business relationship with Holgate and Crow. While it may be true that he was not aware of a potential claim at the time of his initial bankruptcy filing, he nonetheless chose not to disclose his business dealings.
¶ 41 The record clearly settles any debate on whether Skinner knew he had an interest in the Capitol Theater building and the South Gold property. Only one month after the bankruptcy hearing, and before his bankruptcy discharge, Skinner wrote three settlement letters to Holgate attempting to effect a resolution and final accounting of his interest in the properties. Moreover, Skinner signed a loan agreement that valued his interest at $3,000 for each one percent of interest in the GM Properties partnership. Even more glaring is that Skinner admits that Crow attempted to negotiate a release of his debt by asking Skinner to exchange his shares of GM Properties in the Capitol Theater building. Skinner refused the offer because what he "was owed on account for the Capitol Theater building was considerably more than anything anyone claimed [he] owed on account of the S[outh] Gold operation." CP at 536.
¶ 42 Skinner's suggestion that he did not know he had a potential dispute or claim and that he did not list any interest in property because he did not have a "document showing his interest" is without merit. Br. of Appellant at 5-6. Nonetheless, intent to mislead is not an element of judicial estoppel. See Cunningham, 126 Wash.App. at 234, 108 P.3d 147. Judicial estoppel is proper so long as the debtor knew of the facts giving rise to his inconsistent positions, and he had a motive to conceal. Cunningham, 126 Wash. App. at 234, 108 P.3d 147. Skinner had obvious motive to conceal these assets. There is nothing in the record to support Skinner's assertion that he omitted the claim by mistake. Moreover, it was the trustee who later *307 discovered the claim, without Skinner's assistance.
¶ 43 Skinner's attempt to sanitize his failure to list the assets fails because the trustee more than a year later included it and took $45,000 for the benefit of creditors. It was not Skinner who voluntarily came forward at any time, even though within a short time he was trying to negotiate a final accounting of his interests in properties. It was the trustee who discovered the lawsuit and took action.
E. The Trial Court Did Not Decide Any Issues of Fact
¶ 44 Skinner's final argument is that in coming to the conclusion that he was not forthright in his disclosure of his assets, the court essentially decided a disputed issue of fact in favor of the moving party and directly contrary to the law on summary judgment. But as Holgate points out, the trial court found that there were no material questions of fact regarding Skinner's conduct because:
¶ 45 (a) he failed to disclose his ongoing, significant partnership relationships and dealings to the bankruptcy court;
¶ 46 (b) his omission was made under oath, he received a discharge, and the case was closed as "no assets;"
¶ 47 (c) his position in Superior Court was absolutely contrary to his position in bankruptcy court; and
¶ 48 (d) he derived an advantage by not disclosing this asset in his bankruptcy.
¶ 49 Skinner's conduct was applicable only as to whether to apply the judicial estoppel doctrine. However, because judicial estoppel might not apply in cases of simple error or inadvertence, the trial court did not abuse its discretion when it found that Skinner was not "forthright in disclosure of his assets." RP (Sept. 8, 2006 at 22).
F. An Option is Property Even Before it Ripens
¶ 50 In Skinner's reply brief, he notes that he did not "[o]ffend the [d]ignity of the [j]udicial [p]roceedings," Reply Br. of Appellant at 7, because, among other factors, the "question of when a claim `arises' under bankruptcy law is much litigated." Reply Br. of Appellant at 8. Thus, Skinner argues, the portion of his "claim based on loss due to failure to exercise the option arguably did not `arise' until well after [he] received his discharged in 2002." Reply Br. of Appellant at 8. Again, Skinner is misguided.
¶ 51 Skinner is correct that his option to purchase the building did not ripen until January 31, 2004. Even if he did not realize that he had a claim at the time he filed for bankruptcy because the option had not ripened, he still failed to list (a) his interest in GM properties; (b) his claimed interest in Capitol Theater building; (c) his claims against Crow, Holgate, Westlands, or any of the other defendants, regarding joint ventures; (d) any of the income, draws, or loan proceeds Skinner had received from GM Properties; (e) the loan Skinner owed to Crow or GM Properties; or (f) any of the sums Crow paid to Washington Retailtainment Corp. and Skinner.
¶ 52 Moreover, Washington has held that an option to purchase real estate is a valuable and substantial property right. Spokane Sch. Dist. No. 81 v. Parzybok, 96 Wash.2d 95, 102, 633 P.2d 1324 (1981). As the record evidences, Skinner is a sophisticated businessman who was well aware of his valuable and substantial property right in the Capitol Theater building. Skinner's flagrant disregard of the judiciary, as evidenced by his failure to schedule this property right, as well as the other claimed interests listed above, offends the dignity of the judicial proceedings when he states he did not know he was engaged in a partnership with Holgate or that he did not know he had an interest in any of the omitted property.

III. ATTORNEY FEES
A. Attorney Fees at Trial
¶ 53 Holgate argues that the trial court erred when it declined to award attorney fees. Before the trial court, he asserted two alternative grounds for recovery of attorney fees: (a) the equitable principle of bad faith; and (b) under RCW 25.05.250(9), which permits the court to award attorney fees in *308 actions by a dissociated partner. These arguments are unpersuasive.
¶ 54 Awarding attorney fees under a statute or contract is a matter of discretion with the trial court that we will not disturb absent a clear showing of an abuse of that discretion. Fluke Capital & Mgmt. Servs. v. Richmond, 106 Wash.2d 614, 625, 724 P.2d 356 (1986); Culinary Workers & Bartenders Union, Local No. 596 v. Gateway Café, Inc., 91 Wash.2d 353, 372, 588 P.2d 1334 (1979). Abuse of discretion occurs when the trial court's decision rests on untenable grounds or untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 55 Here, the court expressly declined to make a finding that Skinner brought the lawsuit in bad faith. The court also declined to make a finding that Skinner was, in fact, a dissociated partner. The court stated:
My job was to determine that there had been contradictory positions taken in both actions. It really appears to me that the fraud was being committed at bankruptcy, not in bringing this lawsuit, and so I don't know what that has to do with the attorney's fees.
RP (Oct. 6, 2006) at 10. As discussed above, the trial court properly applied the judicial estoppel doctrine, which did not require a finding of bad faith or that Skinner was a dissociated partner. Thus, the trial court acted within its discretion when it denied attorney fees based on its ruling. As such, we affirm the court's decision not to award attorney fees at trial.
B. Attorney Fees on Appeal
¶ 56 Holgate also seeks attorney fees on appeal under RAP 18.1, 18.9 and CR 11, arguing the appeal is frivolous "because there are no debatable issues, and no reasonable possibility of reversal exists." Br. of Resp't at 29. We decline to find this appeal frivolous and therefore decline to award attorney fees.
¶ 57 CR 11 does permit this court to award attorney fees for instances of bad faith on appeal. In re Recall of Ackerson, 143 Wash.2d 366, 377, 20 P.3d 930 (2001). But again, there has been no showing of bad faith and we decline to award attorney fees on that basis.
¶ 58 Under RAP 18.9,[3] the appellate court may award a respondent attorney fees when a petitioner files a frivolous appeal or files an appeal merely to delay the outcome of underlying proceedings. Kearney v. Kearney, 95 Wash.App. 405, 417, 974 P.2d 872, review denied, 138 Wash.2d 1022, 989 P.2d 1137 (1999). An appeal is frivolous when no debatable issues are presented upon which reasonable minds may differ. Olson v. City of Bellevue, 93 Wash.App. 154, 165, 968 P.2d 894 (1998), review denied, 137 Wash.2d 1034, 980 P.2d 1284 (1999). In determining whether an appeal is frivolous, we consider the record as a whole and resolve all doubt in favor of the appellant. Streater v. White, 26 Wash.App. 430, 435, 613 P.2d 187, review denied, 94 Wash.2d 1014 (1980). In addition, we must keep in mind that a civil appellant has a right to appeal. Streater, 26 Wash. App. at 434-35, 613 P.2d 187. In following these authorities, we decline to award Holgate attorney fees on appeal under RAP 18.9.
¶ 59 Affirmed.
We concur: HOUGHTON, C.J., and PENOYAR, J.
NOTES
[1] Specifically, the bankruptcy court order ruled that after having heard the merits of the compromise motion, "and the Court having indicated that the Trustee's discretion warranted substantial consideration as did allowing the debtor his day in court in the above identified adversary proceeding," the case shall be and hereby is remanded to Thurston County Superior Court. CP at 223.
[2] In making its decision, it is likely that the trial court balanced the equities (as indicated in the facts regarding Dunmore's advice given by his attorney) and made the decision that best fit the situation.
[3] RAP 18.9(a) provides in part: "The appellate court on its own initiative or on motion of a party may order a party or counsel, . . . who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court."