IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ELITE HOMES NW, LLC; NICK SCHERBININ; and VADIM and VALENTINA SCHERBININ,<br><br>Appellants,<br><br>v.<br><br>DANIEL V. ODIEVICH, individually and on behalf of the martial community comprised of DANIEL V. ODIEVICH and ANGELINA ODIEVICH; and NONA F. ADAMS, individually and on behalf of the marital community comprised of NONA F. ADAMS and JONATHAN ADAMS,<br><br>Respondents. | No. 86926-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Elite Homes NW LLC appeals from two orders granting summary judgment dismissal of various claims brought against the Odieviches and Adamses. Vadim and Valentina Scherbinin did not disclose their potential suit against the Odieviches as an asset during bankruptcy but later brought the present action despite that omission. The trial judge concluded that the suit was barred by judicial estoppel and dismissed it with prejudice. Because the record on summary judgment and controlling case law plainly support such a ruling, the trial court did not abuse its discretion and we affirm.

FACTS

The Scherbinins and the Odieviches have been involved in an ongoing dispute arising from the Odieviches' investment in 2014 into a limited liability company (LLC) owned and operated by the Scherbinins, Vadim, Valentina, and their adult son, Nick.[1] Daniel and Angelina Odievich invested $250,000 into The Peak Estate #3 LLC to develop property in King County. As a member of the LLC, Vadim signed documents formalizing this investment. Over time, Daniel became frustrated with the lack of return on the investment and Vadim's failure to communicate. Daniel later asserted in a declaration that when he finally heard from Vadim nearly two years later, he was told that the LLC had run into "business problems" and the money had been "lost." In an attempt to recoup the investment, Daniel[2] and other investors, including Nona Adams, contracted with Conflict Solutions Group LLC (CSG).

Daniel and Adams entered into a service agreement with CSG in September 2019. Under the terms of the contract, CSG would act on their behalf to gather information about the Scherbinins and their assets, work with lawyers, and prepare reports for the Odieviches, Adams, and law enforcement. An addendum to the service agreement gave CSG the authority to pursue payment on the promissory notes the Scherbinins had signed to secure the Odieviches'

---

[1] As several parties to this litigation share a last name, we refer to them by their first names as needed for clarity and precision. No disrespect is intended.

[2] Daniel is a signatory to the contract for services with Conflict Solutions Group LLC (CSG), but Angelina is not. Extensive communications between Daniel and Michael Williams, in his capacity as a representative of CSG, were transmitted to this court as part of the record on appeal and they suggest that CSG understood its client to be the Odieviches as a marital community. Because much of this litigation centers on that relationship and actions undertaken based on that contract, and because the suit was brought against the Odieviches as a marital community, we refer to them as such when discussing the litigants generally.

investment, to file lawsuits on the Odieviches' behalf, and to act as the Odieviches' agent in pursuit of the funds owed, and further specified that CSG would be allocated a portion of any subsequent judgments in the Odieviches' favor or amounts otherwise recovered. Michael Williams signed both the service agreement and addendum on behalf of CSG.

In November 2019, CSG filed a complaint for damages against the Scherbinins in Chelan County Superior Court in an attempt to recover the funds owed to the Odieviches. The complaint stated that CSG was acting on behalf of the Odieviches, Adams, and other investors pursuant to the assignment of rights under the service agreement. It listed Vadim, Valentina, and Nick Scherbinin as defendants, as well as nine LLCs operated by the Scherbinins. The primary allegation underlying the CSG complaint was that the Scherbinins had defrauded numerous investors, including the Odieviches and Adams. In addition to filing the lawsuit, CSG gathered information about the Scherbinins and purported to have communicated with various state and federal law enforcement agencies to report conduct of the Scherbinins that it believed constituted crimes. CSG created websites that would later give rise to the defamation claims the Scherbinins brought against the Odieviches. CSG also filed liens against properties owned by the Scherbinin family through their various LLCs, but in the fall of 2019, a judge in King County Superior Court struck the liens and ordered CSG, and Williams personally, to pay the Scherbinins' attorney fees.

Vadim and Valentina filed for voluntary Chapter 7 bankruptcy in December 2020. On December 21, they filed their bankruptcy property schedule that included

a section to record "claims against third parties," which were to be recorded regardless of whether a lawsuit had been filed or a demand for payment had been made at the time of the bankruptcy disclosure. Among the assets listed was a claim valued at $4,500 against CSG for filing fraudulent liens, which was roughly the amount of attorney fees awarded in the King County action to remove the liens. However, this section of the bankruptcy disclosure did not list any potential claims against the Odieviches specifically.

The Odieviches sent a letter to the bankruptcy court in April 2021 that referenced the Chelan County case and the reputed fraud by Vadim and Valentina, as well as the Odieviches' concern that the bankruptcy proceeding would allow Vadim and Valentina to avoid payment of the claims of creditors "while keeping the ill-gotten gains." The Odieviches and Adams were listed as unsecured creditors in the bankruptcy schedule and, as such, both received notices related to the proceeding. Vadim and Valentina moved to convert their Chapter 7 proceeding to a Chapter 11 bankruptcy, and a federal judge granted their motion in June 2021 after conducting a hearing.[3] In September, Vadim and Valentina submitted their bankruptcy reorganization plan to the court for review. Their plan included the following disclosure:

> Post-Confirmation Litigation. The Debtors have a claim against an unknown person or persons responsible for waging an online defamation campaign against the Debtors. This person or persons registered an internet domain in their name and posted false, fraudulent, scandalous and inflammatory content that has substantially impaired the Debtors' reputation and ability to conduct business. The Debtors require legal counsel to take action including but not limited to litigation directed toward taking down the fake

---

[3] The bankruptcy judge issued an oral ruling on the motion, including findings of fact and conclusions of law which are not present in the record before us.

website and scrubbing false and defamatory online content to the maximum extent possible. If this case remains open after Confirmation the Debtors may seek, subject to court approval, employment of litigation counsel to pursue this claim. In the event the Debtors obtain a monetary recovery, the Debtors reserve the right to seek modification of the Plan to address distribution of any net recovery after approved legal fees and costs and compensable litigation expenses.

This reorganization plan was approved by the bankruptcy court in November.

The Scherbinins allege in their complaint in the case at issue in this appeal that Nick Scherbinin is the owner and managing member of Elite Homes, a general contracting firm that constructs homes in Washington and "Vadim and Valentina Scherbinin are employees of Elite Homes, and the parents of . . . Nick Scherbinin."[4] (Some capitalization omitted.) In its January 2022 complaint against the Odieviches, Elite Homes alleged that the Odieviches interfered with a business expectancy, "publicized information and material that showed [the Scherbinins] in a false light," and engaged in defamation, conduct that "constitute[d] civil harassment," and "extreme and outrageous conduct designed to inflict severe emotional distress." The Odieviches' answer, which both made specific denials and asserted affirmative defenses, was filed a few weeks later, along with a supporting declaration from Daniel and numerous exhibits.[5]

Elite Homes filed an amended complaint in March 2023 that added Nona and Jonathan Adams as defendants.[6] More critically, the new complaint added a

---

[4] We use "Elite Homes" to refer to the appellants collectively where possible and "Scherbinins" where Elite Homes is not involved.

[5] The affirmative defenses relate to part of the complaint that was dismissed but not appealed.

[6] Because the Adamses joined the Odieviches' defense in the trial court and in response to this appeal, we refer to the respondents collectively as the Odieviches.

sixth cause of action, specifically seeking relief under the criminal profiteering act,[7] based on their assertion that the Odieviches were leading organized criminal activity, and damages as provided by statute.[8]

The Odieviches filed a motion for partial summary judgment in September 2023. They averred that many of the causes of action rested on facts outside the statute of limitations and sought dismissal of the criminal profiteering claim "because there is no genuine dispute of material fact that [the Odieviches] never engaged in a pattern of criminal profiteering activity, nor did they lead an organized criminal enterprise." They asserted that they had merely hired an "independent contractor who held himself out as experienced in debt recovery investigations" and "the act of hiring this contractor d[id] not constitute any of the acts of criminal profiteering enumerated under" chapter 9A.82 RCW. Elite Homes filed its opposition to this motion in October and offered criminal extortion under chapter 9A.56 RCW[9] as another offense that could support its allegation of criminal profiteering and summarily asserted that genuine issues of material fact remained

---

[7] Ch. 9A.82 RCW.

[8] RCW 9A.82.100(1)(a) establishes a cause of action and remedy for a "person who sustains injury to [their] person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity" and authorizes them to "file an action in superior court for the recovery of damages and the costs of the suit, including reasonable investigative and attorney's fees." Leading organized crime, a class A felony, is one of the offenses expressly included the criminal profiteering act. *See* RCW 9A.82.060.

Elite Homes argued in their amended complaint that the Odieviches had engaged in conduct that

> constitutes the intentional organizing, managing, directing, supervising, or financing any three or more persons with the intent to engage in a pattern of criminal profiteering activity; or inciting or inducing others to engage in violence or intimidation with the intent to further or promote the accomplishment of a pattern of criminal profiteering activity in violation of RCW 9A.82.060.

[9] Specifically, Elite Homes analyzed extortion both in the first degree, a class B felony pursuant to RCW 9A.56.120, and in the second degree, a class C felony under RCW 9A.56.130, in its opposition to summary judgment.

as to its criminal profiteering claim sufficient to survive the motion for summary judgment.

The trial court conducted a hearing on the summary judgment motion in November 2023. Roughly a week later, it entered an order that granted the Odieviches' summary judgment motion as to the criminal profiteering claim and dismissed that cause of action with prejudice. Elite Homes filed a motion for reconsideration two days later that the court ultimately denied.

In May 2024, the Odieviches again moved for summary judgment, this time arguing that the remainder of Elite Homes' claims must be dismissed based on the doctrine of judicial estoppel. This was true, they averred, because Vadim and Valentina had failed to disclose the claims against the Odieviches as potential assets during their bankruptcy proceeding and, thus, could not now assert them. The Odieviches relied on precedent from our state courts and the Ninth Circuit Court of Appeals in support of their position and included numerous exhibits. The trial court granted the Odieviches' second summary judgment motion and dismissed the remaining claims with prejudice in June 2024.

Elite Homes timely appealed.

ANALYSIS

I.      Standard of Review

We review the dismissal of a claim on summary judgment de novo and conduct the same inquiry as the trial court. *Wash. Fed. v. Harvey*, 182 Wn.2d 335, 339, 340 P.3d 846 (2015). Summary judgment is appropriate if "'there is no genuine issue as to any material fact and the moving party is entitled to judgment

as a matter of law.'" *Id.* at 340 (quoting *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)). A fact is material if the outcome of the litigation turns on said fact. *Haley v. Amazon.com Servs., LLC*, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022). "The party moving for summary judgment bears the initial burden of showing that there is no disputed issue of material fact. The burden then shifts to the nonmoving party to present evidence that an issue of material fact remains." *Id.* (citation omitted). A defendant may rest a summary judgment motion on a challenge to whether the plaintiff can make a prima facie showing as to each element of the causes of action presented. *Samra v. Singh*, 15 Wn. App. 2d 823, 832, 479 P.3d 713 (2020). We "view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party." *Boyd v. Sunflower Props., LLC*, 197 Wn. App. 137, 142, 389 P.3d 626 (2016). Finally, we "may affirm on any basis supported by the record whether or not the argument was made below." *Bavand v. OneWest Bank*, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

II.     Judicial Estoppel

Elite Homes challenges the trial court's conclusion on the applicability of the doctrine of judicial estoppel. A different trial judge than the one who had ruled on the Odieviches' first summary judgment motion concluded that Vadim and Valentina were "judicially estopped from asserting their claim [t]herein because they did not disclose th[o]se claims on their schedule of assets filed in their bankruptcy proceedings." After so concluding, the court explained that the statute of limitations had run on the defamation claim, Elite Homes had failed to produce evidence to refute the Odieviches' position that the claims were "at least

substantially true and therefore not actionable defamation," and the claim "for tortious interference with a business expectancy failed for a lack of causally related damages" because the business entities that suffered the purported harm were now dissolved.

Elite Homes argues on appeal that the bankruptcy court already determined Vadim and Valentina's disclosure was adequate and state courts are required to give effect to that determination.[10]  Ultimately, it contends the Odieviches did not make the showing required for the application of judicial estoppel.  But, in briefing and at oral argument, Elite Homes failed to meaningfully engage in a discussion of the elements of judicial estoppel.

In response, the Odieviches assert that the application of judicial estoppel was proper because "the Scherbinins had an affirmative obligation to disclose their assets to the bankruptcy court on the asset disclosure form, but failed to disclose this claim."  At oral argument before this court, the Odieviches asserted that the limited discussion of the claim that did occur did not happen until after the conversion of the bankruptcy from a Chapter 7 to a Chapter 11 proceeding, which was approved by the creditors based on the disclosures made in the initial asset schedule provided.[11]

---

[10] Elite Homes also argued that the doctrines of collateral estoppel and res judicata should preclude the Odieviches from taking their current position because they did not contest the adequacy of the disclosure during bankruptcy.  However, Elite Homes did not offer any authority that a creditor is required to prompt a debtor to pursue claims against that same creditor and did not offer substantive argument applying the elements of either of these doctrines to the present case.

[11] Wash. Ct. of Appeals oral arg., *Elite Homes NW, LLC v. Odievich*, No. 86926-4-I (June 5, 2025), 11 min., 59 sec. to 14 min., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025061139/.

Separate from the summary judgment procedural posture presented here, we review a determination by the trial court on the applicability of judicial estoppel for abuse of discretion. *Urbick v. Spencer Law Firm, LLC*, 192 Wn. App. 483, 488, 367 P.3d 1103 (2016).[12] The trial court's application of the doctrine is an abuse of discretion if the decision is based on "untenable or unreasonable grounds." *Id.* Judicial estoppel "'precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.' It is intended to protect the integrity of the courts but is not designed to protect litigants." *Arp v. Riley,* 192 Wn. App. 85, 91, 366 P.3d 946 (2015) (footnote and internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)).

> Three core factors guide a trial court's determination of whether to apply the judicial estoppel doctrine: (1) whether "a party's later position" is "clearly inconsistent with its earlier position"; (2) whether "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Arkison*, 160 Wn.2d at 538-39 (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

Before turning to the merits of the ruling on review, we briefly review some foundational principles of bankruptcy proceedings, as some aspects are relevant

---

[12] Elite Homes contends that we should review the application of judicial estoppel de novo but does not offering controlling authority in support of that position. Instead, it offers an inconclusive footnote from *Taylor v. Bell*. 185 Wn. App. 283 n.13, 340 P.3d 951 (2014). But, authority that predates *Taylor*, in addition to subsequent cases, have reviewed the application of judicial estoppel for abuse of discretion, even in the context of summary judgment. *See Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007); *Urbick*, 192 Wn. App. at 488.

here. "Chapter 7 allows a debtor to make a clean break from [their] financial past, but at a steep price: prompt liquidation of the debtor's assets." *Harris v. Viegelahn*, 575 U.S. 510, 513 (2015). The compromise is that "while a Chapter 7 debtor must forfeit virtually all [their] prepetition property, [they are] able to make a 'fresh start' by shielding from creditors [their] postpetition earnings and acquisitions." *Id*. at 514. When a debtor files for bankruptcy, an estate is created "which includes all legal or equitable interests of the debtor in property as of the commencement date." *Marks v. Benson,* 62 Wn. App. 178, 184, 813 P.2d 180 (1991); 11 U.S.C. § 541(a)(1). In proceedings under Chapter 7, "the bankruptcy trustee has an obligation to collect and reduce to money the property of the estate." *Marks*, 62 Wn. App. at 184; 11 U.S.C. § 704(1). A debtor may convert their Chapter 7 bankruptcy to a Chapter 11 proceeding with permission from the court. 11 U.S.C. § 706. By contrast, in a Chapter 11 bankruptcy, "debtor[s] and creditors try to negotiate a plan that will govern the distribution of valuable assets from the debtor's estate and often keep the business operating as a going concern." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 455 (2017).

In Chapter 11 bankruptcy proceedings, debtors have "an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *Skinner v. Holgate*, 141 Wn. App. 840, 848, 173 P.3d 300 (2007); 11 U.S.C. § 521(a). This duty remains even if the chances of success are not known. *Skinner,* 141 Wn. App. at 848-49. This court has already answered this precise question and definitively held that judicial estoppel can apply to parties that have a legal claim, file for bankruptcy, do not list the claim as an asset, and then,

nonetheless, pursue those claims. *Bartley-Williams v. Kendall,* 134 Wn. App. 95, 98, 138 P.3d 1103 (2006). By failing to disclose an asset, the debtor keeps for themselves property that "'may have created a dividend for the debtor's unsecured creditors.'" *Ingram v. Thompson*, 141 Wn. App. 287, 291, 169 P.3d 832 (2007) (quoting *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 909, 28 P.3d 832 (2001)). "[D]eliberate or intentional manipulation, which can be inferred from the record, mandates" the application of judicial estoppel. *Skinner,* 141 Wn. App. at 853-54.

Vadim and Valentina did not list the claim against the Odieviches as an asset and, even though its value may have been strictly theoretical at that time, did not assign any value to it. The timing of the somewhat nebulous disclosure in the organization plan within the bankruptcy proceeding informs part of our analysis. Vadim and Valentina did not disclose the claim while the bankruptcy was proceeding under Chapter 7. Instead, they waited until their case had successfully been converted to one under Chapter 11.[13] Significantly, by waiting to disclose the claim, it went from a potential asset the bankruptcy trustee would be duty-bound to pursue immediately, so as to make the settlement funds available to creditors, to a rather ambiguous asset that could be pursued at some indefinite point in the future.[14] This supports the conclusion that Vadim and Valentina derived an unfair advantage from the positions they took in the respective proceedings. By failing to disclose the claim prior to conversion, only providing a

---

[13] At oral argument in this court, counsel for Elite Homes represented that the bankruptcy was ongoing. Wash. Ct. of Appeals oral arg., *supra*, at 5 min., 3 sec.
[14] The Odieviches also challenged the causes of action Elite Homes presented on the separate basis that the applicable statutes of limitations had expired on certain claims.

vague description buried within the reorganization plan, and then pursuing the present claim, they attempted to retain control over that asset.

The overall sequence of events is significant as well. *See Skinner*, 141 Wn. App. at 853-54. The timeline of events established in the record suggests that Vadim and Valentina deliberately kept the description of the claim in the reorganization plan imprecise. CSG's Chelan County case was filed in November 2019. That complaint explicitly stated that CSG had been assigned the right to file that suit on behalf of investors and named the Odieviches and Adams among those investors. Vadim filed a declaration in Chelan County Superior Court in June 2020, six months before the bankruptcy schedule was filed in federal court, where he explicitly connected CSG and the Odieviches.[15] Vadim stated in the declaration, which he signed under penalty of perjury, that Daniel hired CSG and Daniel and CSG had "engaged in a coordinated campaign to harass [his] family and [him]." Vadim's declaration even connected CSG to the websites he claimed were defamatory and that served as the basis for the claims in the suit he, his family, and Elite Homes ultimately filed against the Odieviches. And yet, in September 2021, after Vadim and Valentina filed their asset schedule in bankruptcy court, they asserted in their proposed reorganization plan that the online harassment campaign was being perpetrated by "an unknown person or persons." It strains credulity to suggest that Vadim had not connected CSG, the Odieviches, and the

---

[15] While the header indicates that it was filed in Chelan County District Court, the cause number on the declaration is for a superior court case. The caption indicates that Vadim and Valentina had filed an action against Williams in 2020, and the contents of the declaration include a number of their accusations of harassment and threats by him. It was filed in the instant case as an exhibit to a declaration filed by the Scherbinins/Elite Homes' counsel, Brian Waid.

reputedly defamatory websites more than a year after his signed declaration where he expressly asserted details regarding those very connections.

By the fall of 2021, the Odieviches' efforts through CSG to recover their investment funds from the Scherbinins had been ongoing for two years. The application of judicial estoppel is appropriate if the acceptance of inconsistent positions would create the perception that either the first or the second court has been misled. *Arkison*, 160 Wn.2d at 538-39. Here, the record supports this conclusion; Vadim had numerous reasons to know, and even stated in a declaration signed roughly a year and a half prior, that CSG and the Odieviches were the source of the websites described in the reorganization plan filed in bankruptcy court. The omission of this information from the bankruptcy schedule is suggestive of deliberate or intentional manipulation. *See Skinner*, 141 Wn. App. at 853-54 ("Judicial estoppel is proper so long as the debtor knew of the facts giving rise to [their] inconsistent positions and [they] had a motive to conceal."). It also demonstrates that the two positions Vadim and Valentina took on this asset are inconsistent; either the connection was known or it was not.

In certain circumstances this court has concluded that where a debtor failed to properly list or accurately assign value to a potential claim as an asset, the disclosure was nonetheless adequate such that the application of judicial estoppel was incorrect. *See Ingra v. Thompson*, 141 Wn. App. 287, 292-93, 169 P.3d 832 (2007) (fact that debtor had undervalued personal injury claim did not justify application of judicial estoppel); *Baldwin v. Silver*, 147 Wn. App. 531, 536-37, 196 P.3d 170 (2008) (fact that debtor had listed insurance claim in statement of affairs

but not as an asset did not justify application of judicial estoppel). However, this is not such a case. The record before the trial court here supports its reasonable conclusion that at least Vadim had deliberately misled the bankruptcy court by claiming ignorance as to who had published the websites after declaring under penalty of perjury that CSG and Daniel were responsible. The trial court did not abuse its discretion when it concluded that the doctrine barred the remaining causes of action or ruled to dismissing the case with prejudice.

While the Odieviches did not move for dismissal on the basis of judicial estoppel until May 2024, well after the trial court's summary judgment dismissal of Elite Homes' criminal profiteering act claim on other grounds in November 2023, the record before us supports our conclusion that judicial estoppel also applied to that cause of action because that claim was completely absent from the disclosure of the potential suit in the September 2021 reorganization plan. We may affirm on any basis supported by the record. *Bavand*, 196 Wn. App. at 825. Because Vadim and Valentina's assertions in the reorganization plan would have equally estopped Elite Homes from presenting the criminal profiteering claim, we need not reach the substance of its separate arguments regarding the November 2023 summary judgment order dismissing that cause of action.

Affirmed.

WE CONCUR:

- 15 -